1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SUZY CLEANERS, an organization, et al.,<br><br>Defendants. | Case No.:  3:20-cv-00234-RBM-DEB<br><br>**ORDER GRANTING DEFENDANT M&E'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>**[Doc. 147]** |

Plaintiff Pacific Resources Associates LLC ("Plaintiff") previously owned a storefront in the Valley Plaza shopping center in Escondido, California.  Plaintiff seeks relief against the current and former owners and operators of two separate dry-cleaning businesses located in the same shopping center for allegedly contaminating the soil beneath its property with perchloroethylene ("PCE"), a chlorinated solvent commonly used in the dry-cleaning industry.

Defendant M&E Brothers, LLC ("M&E") has reached a tentative settlement agreement with Plaintiff and now moves this Court to approve the settlement as made in "good faith" in accordance with California Code of Civil Procedure sections 877 and 877.6 on the grounds that the settlement agreement between Plaintiff and M&E meets the test for

1

"good faith" set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488 (1985) ("Motion"). (Doc. 147.) Additionally, M&E seeks an order barring all existing and future claims against it for indemnity and/or contribution. (*Id.*) Plaintiff joined M&E's Motion. (Doc. 149.)

Defendants Kim Hortman Buhler (as administrator and executor of the Estate of Barbara Hortman) and Kim Hortman Buhler and Norman Alton Hortman III (as trustees of The Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2, 1985) (collectively, the "Hortmans") oppose M&E's Motion on the grounds that the indemnity/contribution bar requested by M&E is overbroad (the "Hortman Opposition"). (Doc. 158.)

Defendants Guhn Y. Kim, Yun Soon Kim, and The Kim Family Trust of 2017 (collectively, the "Kims") also oppose the M&E's Motion on the grounds that the proposed settlement is disproportionate to M&E's estimated liability. Like the Hortmans, the Kims also contend that the requested indemnity/contribution bar is overbroad (the "Kim Opposition"). (Doc. 157.)

On August 21, 2023, M&E filed its Reply in Support of its Motion for Good Faith Settlement against the Hortmans (the "Hortman Reply"). (Doc. 162.) The same day, M&E filed its Reply in Support of its Motion for Good Faith Settlement against the Kims (the "Kim Reply"). (Doc. 163.)

After careful consideration, the Court **GRANTS** M&E's Motion but clarifies the permissible scope of the requested contribution/indemnity bar.

## I.      BACKGROUND

**A.      Statement of Facts**

### 1.      Plaintiff and the 1680 Property

Plaintiff owned the property located at 1680 East Valley Parkway, Escondido, California 92027, a storefront in the Valley Plaza shopping center, from February 12, 2001 until November 2022 (the "1680 Property"). (Doc. 114, Second Amended Complaint ("SAC"), ¶ 33.)

### 2.      M&E, the Hortmans, and the 1718 Property

M&E owns the property located at 1718 East Valley Parkway, Escondido, California 92027, another storefront in the Valley Plaza shopping center (the "1718 Property").  (Doc. 147 at 7.)[1]  The 1718 Property is located east of Plaintiff's 1680 Property.  (Doc. 153 at 4.)  Prior to M&E's ownership, the 1718 Property was home to a dry-cleaning business owned and operated by the Hortmans.  (Declaration of Flor De Lys Barawid ("Barawid Decl.") ¶ 8 [Doc. 147-8].)

### 3.      The Kims and the 1654 Property

The Kims own the property located at 1654 East Valley Parkway, Escondido, California 92027, a third storefront in the Valley Plaza shopping center (the "1654 Property").  (Doc. 147 at 9.)  The 1654 Property is located west of Plaintiff's 1680 Property.  (Doc. 153 at 4.)  The 1654 Property is currently home to Suzy Cleaners.  (Doc. 157 at 12.)

### 4.      Plaintiff's Allegations

In its SAC, Plaintiff alleges that all former and current owners and operators of the dry-cleaning businesses located at the 1654 Property and the 1718 Property (including the Kims and the Hortmans) released PCE into the soil beneath the properties, which then migrated and contaminated the soil beneath Plaintiff's 1680 Property.  (SAC ¶¶ 36, 39, 41.)  Plaintiff alleges that it has incurred substantial response costs and will continue to incur response, removal, and remediation costs in the future.  (SAC ¶¶ 40, 42–46.)  Notably, however, Plaintiff no longer owns the 1680 Property.  (SAC ¶ 33.)

## B.  Procedural History

Plaintiff initially filed this case on February 6, 2020—nearly four years ago.  (Doc. 1.)  Plaintiff then amended its complaint on February 3, 2023 (Doc. 83) and on May 1, 2023 (Doc. 114).  Plaintiff's SAC asserts three causes of action under the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),

---

[1]The Court cites to the court-generated CM-ECF page number.

one cause of action under California's Hazardous Substances Account Act ("HSAA"), and nine additional tort and equitable causes of action under California state common law. (SAC ¶¶ 47–122.)  Each cause of action is premised on the alleged contamination of Plaintiff's 1680 Property with PCE.  (*Id.*)

On April 27, 2023, the Kims answered Plaintiff's SAC, denying all liability.  (Doc. 155 at 1–17.)  The Kims also filed their Second Amended Third-Party Claims against M&E, the Barawids, the Hortmans, and other former owners and operators of the dry-cleaning businesses previously located at the 1718 Property.  (*Id.* at 17–27.)  The Kims allege that the sole source of the PCE contamination is the 1718 Property, not their 1654 Property.  (*Id.* at 18–19.)  Therefore, the Kims assert that they are entitled to contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432 from M&E, the Barawids, the Hortmans, and/or other former owners and operators of the dry-cleaning businesses previously located at the 1718 Property.  (*Id.* at 20–25.)  The Kims also contend that M&E, the Barawids, the Hortmans, and the other prior owners and operators of the 1718 Property are the sole source of the contamination on the Kims' 1654 Property and are liable for those response costs as well.  (Doc. 157 at 28–30.)  On May 18, 2023, M&E and the Barawids answered the Kim's Second Amended Third-Party Claims, denying all liability.  (Doc. 128.)  Notably, M&E and the Barawids did not assert any claims against the Kims.  (*Id.*)

On May 19, 2023, the Hortmans answered Plaintiff's SAC, denying all liability. (Doc. 129.)  Additionally, the Hortmans filed crossclaims for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432 against all other defendants named in Plaintiff's SAC, including the Kims and M&E, for any potential liability to Plaintiff.  (*Id.* at 32.)  The Hortmans also filed a Third-Complaint Complaint against prior owners and operators of the 1718 Property dating back to the 1960s for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432.  (*Id.* at 48–63.)  These third-party defendants have not appeared in this litigation.

On November 30, 2022, M&E filed a separate complaint against the Hortmans (22-

4

cv-01892-RBM-DEB, Doc. 1), which it then amended on March 22, 2023 (22-cv-01892-RBM-DEB, Doc. 13).   In its First Amended Complaint against the Hortmans, M&E contends that it is entitled to the recovery of response costs and contribution for the investigation and cleanup of its 1718 Property (*id.* at 12–15, 23), as well as damages for negligence, nuisance, trespass, and waste (*id.* at 16–24).

## C.   The Tentative Settlement Agreement.

Plaintiff and M&E have reached a tentative settlement agreement.  (Doc 147-2 at 2 ("Settlement Agreement").)   The settlement agreement includes the following material terms:

- M&E shall deliver to Plaintiff's counsel the sum of $25,000. (Settlement Agreement at 3.)
- "This Agreement is subject to, and expressly contingent upon, a determination that the settlement contemplated by this Agreement is a good faith settlement pursuant to California Code Civil Procedure § 877.6 and various 9th Circuit case law as they pertain to CERCLA liability…." (*Id.*)
- "[I]n the alternative, entry of an order dismissing all of Pacific's claims in the action with prejudice against all Defendants." (*Id.*)

Plaintiff and M&E executed the settlement agreement on July 10, 2023.  (*Id.* at 7.)

## D.   M&E's Motion

In accordance with the material terms outlined above, on July 21, 2023, M&E filed the present Motion.  (Doc. 147.)   In its Motion, M&E requests a determination that the tentative settlement agreement between M&E and Plaintiff has been made in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6 and that the tentative settlement will bar all existing and/or future claims against M&E for indemnity and/or contribution, equitable partial, or total.  (*Id.* at 2.)  M&E's Motion is made on the grounds that the agreed-to settlement meets the test for good faith set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488 (1985).  (*Id.*)  Additionally, M&E asserts that the agreed-to settlement is fair, reasonable, and consistent with the

5

objectives and policy underlying CERCLA, which also permits contribution protection for M&E.  (*Id.* at 19.)

Specifically, M&E argues that the proposed settlement agreement meets the test for good faith set forth in *Tech-Bilt, Inc.* because it is the result of lengthy, arms-length, court-assisted settlement negotiations based on the information available to the parties at the time of settlement, including numerous documents and expert opinions.  (*Id.* at 18–19.)  M&E also contends that the non-settling defendants were provided ample opportunity to join the good-faith settlement agreement but chose not to (*id.* at 19), that it should have to pay less than if this matter were to proceed to trial (*id.* at 23), that it is not financially capable of litigating this matter and performing the investigation and remediation of its own property, and that there is no evidence of collusion or fraud (*id.* at 24).

Most importantly, M&E contends that its proportionate share of any potential liability to Plaintiff is **zero percent** because it has never leased any portion of the 1718 Property to a dry-cleaning business.  (*Id.* at 20.)  Rather, M&E uses the 1718 Property to operate an adult daycare business that does not utilize dry-cleaning chemicals.  (*Id.*)  Alternatively, M&E argues that, even if it were somehow liable to Plaintiff, the evidence gathered to date indicates that the 1654 Property is the most likely source of the PCE contamination, not the 1718 Property (*id.* at 20–22), and that the Hortmans would share the bulk of any contamination attributed to the 1718 Property (*id.* at 8, 22).   M&E also notes that Plaintiff's recovery is now capped because it has sold the 1680 Property.  (*Id.* at 23.)

Finally, M&E requests that the Court bar all liability for contribution or indemnity in connection with the "site" and the subject matter of this litigation.  (*Id.* at 24–25.)  M&E defines "site" as the 1654 Property, the 1718 Property, and the 1680 Property, collectively.  (*Id.* at 8.)  More specifically, M&E requests that the Court bar and/or dismiss with prejudice: (1) Plaintiff's claims against M&E, (2) the Hortmans' cross complaint against M&E, (3) the Kims' Third-Party Claims for contribution and/or indemnity, and (4) Defendant Angela Hong's cross complaint against M&E.  (*Id.* at 25.)

On July 25, 2023, Plaintiff joined the Settling Defendant's Motion.  (Doc. 149.)

**E.    The Hortman Opposition**

In their opposition, the Hortmans contend that the contribution/indemnity bar requested by M&E is overbroad.  (Doc. 158.)  Specifically, the Hortmans contend that M&E seeks to be discharged from all liability for contribution and/or indemnity in connection with the contamination of Plaintiff's 1680 Property, the Kim's 1654 Property, and M&E's 1718 Property when the proposed settlement only contemplates damages attributable to Plaintiff's investigation of the 1680 Property.  (*Id.* at 7.)  Hypothetically, this broad bar could prevent the Hortmans from seeking contribution and/or indemnity for costs associated with the investigation and/or cleanup of the Kim's 1654 Property and/or M&E's 1718 Property in addition to barring future claims related to Plaintiff's 1680 Property.  (*Id.*)  Such a broad bar would also prohibit the Hortmans from seeking contribution and/or indemnity for claims by the current or future owners of the 1680 Property, which may incur additional investigation and/or cleanup costs.  (*Id.*)  Thus, the Hortmans request that the Court narrow the scope of the bar.  (*Id.* at 11.)

**F.    The Kim Opposition**

In the Kim Opposition, the Kims argue that M&E's Motion is unsupported by evidence, such as affidavits and declarations, demonstrating M&E's proportionate share of any potential liability to Plaintiff.  (Doc. 157 at 11–12.)  The Kims then contend that M&E, as the current owner of the 1718 Property, could (and would) be held liable under CERCLA for the Kims' investigation and cleanup costs related to Plaintiff's 1680 Property as well as the Kims' 1654 Property even though M&E has never leased the 1718 Property to a dry cleaner during its ownership of the 1718 Property.  (*Id.* at 17–20, 27–28.)  The Kims present scientific evidence that the 1718 Property is the sole source of the contamination and, therefore, that M&E's share of the liability is greater than the amount of the settlement.  (*Id.* at 20–27.)  Finally, the Kims contend that the indemnity/contribution bar requested by M&E is overly broad because it would bar the Kims' claims against M&E for the investigation and cleanup of the 1654 Property, as well as well as any indemnity and/or

contribution claims stemming from a hypothetical future lawsuit from the current and/or future owners of the 1680 Property who are not a party to this litigation. (*Id.* at 28–31.) Alternatively, the Kims request that the Court deny M&E's Motion without prejudice to allow for discovery regarding M&E's financial condition. (*Id.* at 31.)

## II.   LEGAL STANDARD

### A.   Supplement Jurisdiction and Choice of Law

This Court has subject matter jurisdiction over Plaintiff's CERCLA claims pursuant to 28 U.S.C. § 1331 because the causes of action alleged herein arise under the Constitution, laws, or treaties of the United States, or are supplemental thereto. *State of Cal. on Behalf of California Dep't of Health Servs. v. B & R Davis Fertilizers, Inc.*, 29 F.3d 634 (9th Cir. 1994). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Plaintiff's federal CERCLA claims. (*Id.*)

"When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). The Ninth Circuit has held that California Code of Civil Procedure section 877 constitutes substantive law and, therefore, that federal courts look to California law to decide whether a settlement was made in good faith with respect to the state law tort claims. *Id.* (citing *Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir.1990)). Although California Code of Civil Procedure section 877.6 is the procedural mechanism for section 877, "the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law." *Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477–78 (C.D. Cal. 1997).

### B.   California Code of Civil Procedure Sections 877 and 877.7

Plaintiff and M&E seek a determination that the proposed settlement has been made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6. These

provisions apply to Plaintiff's state law claims. *Mason & Dixon Intermodal, Inc.*, 632 F.3d at 1060; *Slaven*, 958 F. Supp. at 1477–78.

Section 877 governs the effect of a release of claims given "in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights." Cal. Civ. Proc. Code § 877. The good faith settlement "shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release…." § 877(a). Further, "[i]t shall discharge the party to whom it is given from all liability for any contribution to any other parties." § 877(b).

"[A] settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. The application shall indicate the settling parties, and the basis, terms, and amount of the settlement." § 877.6(a). "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." § 877.6(c).

In other words, "[s]ection 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant, but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by the amount of consideration paid for the settlement. Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the non-settling defendants obtain in return a reduction in their ultimate liability to the plaintiff." *Abbott Ford, Inc. v. Superior Ct.*, 43 Cal. 3d 858, 871–73 (1987) (citations and quotations omitted). "[T]he provisions of sections 877 and 877.6—governing the effect that a settlement agreement has on a settling defendant's potential liability to other defendants for contribution or comparative indemnity—have two major

goals: the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Id.* at 871–72.

"The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response…." *Id.* at § 877.6(b).  To determine whether a settlement had been made in good faith, and therefore bars all future claims by any tortfeasor for contribution or indemnity, California courts consider the factors identified by the California Supreme Court in *Tech-Bilt, Inc.*:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including [1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.  Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499–500 (1985). "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Id.*

Further, "[t]he party asserting the lack of good faith shall have the burden of proof on that issue."  § 877.6(d).  The non-settling party is "permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500 (citations omitted).  "If contested, declarations by the non-settlor should be filed which in many cases could require the moving party to file responsive counter declarations to negate the lack of good faith asserted by the non-settling contesting party." *City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1261–62 (Ct. App. 1987) (emphasis added).

Should a court grant an application for a good faith settlement determination under California Code of Civil Procedure sections 877 and 877.6, "only those non-parties with constitutionally sufficient prior notice will be bound by a 'good faith settlement' determination[.]" *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010); *see also Singer Co. v. Superior Court*, 179 Cal. App. 3d 875, 890–91 (1986); *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006) ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard."). In other words, the scope of the contribution/indemnity bar is not unlimited. *Hartford Accident & Indem. Co. v. Superior Ct.*, 29 Cal. App. 4th 435, 441 (1994) ("[T]he focus of the statutory scheme is on settlements by a plaintiff with one of several parties alleged to be jointly liable for the same tortious injury."); *see also Arizona Pipeline Co. v. Superior Ct.*, 22 Cal. App. 4th 33, 42 (1994); *West v. Superior Ct.*, 27 Cal. App. 4th 1625, 1636–37 (1994); *C. L. Peck Contractors v. Superior Ct.*, 159 Cal. App. 3d 828, 831 (Ct. App. 1984).

Determinations of good faith made under California Code of Civil Procedure sections 877 and 877.6 apply to claims asserted under the HSAA in addition to California state common law claims. *Fullerton Redevelopment Agency v. S. Cal. Gas Co.*, 183 Cal. App. 4th 428, 432 (2010).

## C.   CERCLA

M&E also seeks approval of its settlement agreement and an order providing it with contribution protection under CERCLA. 42 U.S.C. § 9613(f). In considering this request, the Court first reviews CERCLA's statutory framework.

Congress enacted CERCLA "in response to the serious environmental and health risks posed by industrial pollution." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). CERCLA "imposes *strict liability* on four categories of potentially responsible parties (PRPs) for the cleanup costs of an environmental hazard, *even if the person did not contribute to the contamination*." *Chubb Custom Ins. Co. v.*

11

*Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (emphasis added).  "CERCLA liability is joint and several, meaning that a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination.  The party saddled with the cleanup costs may, in turn, sue other potentially responsible parties for contribution."  *California Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912 (9th Cir. 2010); *see also AmeriPride Servs. Inc. v. Tex. E. Overseas Inc.*, 782 F.3d 474, 480 (9th Cir. 2015); 42 U.S.C. § 9607(a); 42 U.S.C. 9613(f)(1).

There are four categories of potentially responsible parties ("PRPs"):

> …(1) the owner and operator of a vessel or a facility,[2] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment … of hazardous substances … , and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities … from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…

42 U.S.C. § 9607.  PRPs are responsible for "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe...; (B) any other necessary costs of response incurred by any other person…; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study…."  42 U.S.C. § 9607(a)(4)(A)–(D).

CERCLA's otherwise harsh, strict-liability scheme encourages settlement by providing so-called "contribution protection" to "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement[.]"  42

---

[2] "The term 'facility' means … any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located… ."  42 U.S.C. 9601(9).

U.S.C. § 9613(f)(2).  In other words, CERCLA prevents parties settling with the United States or a State from later being sued for contribution by non-settling parties.  *Id.*  "Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement."  *Id.*  CERCLA is silent as to whether contribution protection and the reduction of the remaining liability applies to settlement agreements between private parties.

In the absence of express authority, the Ninth Circuit looks to another CERCLA provision for the authority to allocate costs and afford contribution protection in settlements between private parties: "In resolving contribution claims, the court may allocate response costs among liable parties *using such equitable factors as the court determines are appropriate*."  42 U.S.C. § 9613(f)(1) (emphasis added).  In *AmeriPride Services, Inc.*, the Ninth Circuit held that "a district court has discretion under [this provision] to determine the most equitable method of accounting for settlements between private parties in a contribution action."  782 F.3d at 487.  However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA.  *Id.* at 488.  "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion."  *Id.*

When considering the equitable allocation of costs, courts weigh the so-called "Gore Factors."  They are "(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment."  *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146, n. 1 (9th Cir. 2018) (internal quotation omitted).

13

While districts courts are free to grant settling parties contribution protection, the scope of permissible contribution protection is limited.  "CERCLA's policy of encouraging settlements by authorizing contribution protection to settling parties should not be construed in a manner that ambushes persons…who had no connection with, and no responsibility for, the pollution on the site at issue in the settlement…."  *City of Emeryville v. Robinson*, 621 F.3d 1251, 1264 (9th Cir. 2010).  "[T]he overwhelming majority of courts that have imposed or enforced a CERCLA contribution bar in a private-party settlement have done so only where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who otherwise had at least constructive notice that their contribution claims stood to be extinguished."  *Id.* at 1265.  A contribution bar should not extend beyond "matter expressly contemplated by the parties in entering into the [] [s]ettlement."  *Id.* at 1264.

### III.   DISCUSSION

**A.   The Proposed Settlement Agreement is a Good Faith Settlement Agreement Pursuant to California Code of Civil Procedure Section 877 and 877.6, Barring Certain Claims for Indemnity and/or Contribution Against M&E**

**1.   The *Tech-Bilt, Inc.* Factors**

To prevail, the Hortmans and the Kims must prove that the proposed settlement agreement is not a "good faith settlement" under California Code of Civil Procedure sections 877 and 877.6.  Cal. Code Civ. Proc. §877.6(d); *see also Tech-Bilt, Inc.*, 38 Cal. 3d 488 at 499–500.  They have not met this burden.  A careful review of M&E's Motion, the Hortman Opposition, the Kim Opposition, the Hortman Reply, the Kim Reply, and the operative pleadings reveals that the proposed settlement agreement satisfies the test for a good faith settlement set forth in *Tech-Bilt, Inc.*

**a)   M&E's Proportionate Liability**

The first four *Tech-Bilt, Inc.* factors are the most important.  They are "[1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and

14

[4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

A rough approximation of Plaintiff's total recovery is $185,000 in response costs to retain experts to investigate the contamination and to work with the Regional Water Quality Control Board because Plaintiff no longer owns the 1680 Property and, therefore, will not continue to incur response costs.  (Doc. 138 at 2; SAC ¶ 33.)  M&E has agreed to pay $25,000, approximately 13.5% percent, of Plaintiff's total recovery.  (Settlement Agreement at 3.)  The Court is persuaded that this allocation is fair based on the evidence presented by M&E in support of their Motion, as well as the evidence presented by the Kims in support of their opposition.

M&E contends, and the Kims do not dispute, that it has never operated a dry-cleaning business at the 1718 Property.  (Doc. 147 at 20.)  Instead, M&E operates an adult daycare facility that does not release any dry-cleaning chemicals into the environment. (*Id.*)  Nevertheless, the Kims argue adamantly that M&E is strictly liable for the pollution at all three properties.  (Doc. 157 at 20–27.)  While this may be true under CERCLA (discussed further below), the Kims have not argued or cited any law suggesting that M&E can be held strictly liable under Plaintiff's state common law and HSAA claims.

Further, even assuming that the Kims are correct, and that the sole source of the PCE contamination at all three properties is the dry cleaner previously located on M&E's 1718 Property, M&E's proportionate share of liability is still diluted by the Hortmans' share of liability, as well as by the shares of other prior owners and operators of the 1718 Property dating back to the 1960s.  The Kims themselves presented evidence that the dry-cleaning business located at the 1718 Property was cited for spilling chemicals during the Hortmans' ownership, not M&E's ownership.  (Doc. 157-2 at 58.)  Thus, the Kims have not demonstrated that the settlement is "so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute[,]" especially considering the notion that a settling defendant should pay less that it would if found liable at trial. *Tech-Bilt, Inc.*, 38 Cal. 3d 488 at 499–500.

### b)   M&E Financial Condition

"Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500. In their opposition, the Kims contend that Flor de Lys Barawid's declaration regarding M&E's financial condition is "vague and non-specific" and that further discovery is needed to determine M&E's ability to pay. (Doc. 157 at 31.) While the Court agrees that M&E's declaration is rather vague, this does not overshadow the Court's analysis above regarding M&E's proportionate share of liability. Further discovery regarding M&E's financial condition is not necessary.

### 2.   The Permissible Scope of the Requested Contribution/Indemnity Bar

Both the Hortmans and the Kims contend that the contribution/indemnity bar requested by M&E and Plaintiff is overbroad. First, the Court is not convinced that the bar requested by M&E is as broad sweeping as the Hortmans and the Kims suggest. In its Motion, M&E specifies exactly which claims are to be dismissed. (Doc. 147 at 25.) Further, the terms of the executed settlement agreement suggest that the moving parties only intended the contribution/indemnity bar to apply to Plaintiff's cost-recovery claims for its 1680 Property because the settlement agreement provides for an alternative remedy: "entry of an order dismissing all of Pacific's claims in the action with prejudice against all Defendants." (Doc. 147-2 at 3.) Had the moving parties intended for the indemnity/contribution bar to extend beyond Plaintiff's cost-recovery claims for the 1680 Property, this alternative remedy would not be sufficient. Nevertheless, the Court clarifies the permissible scope of the requested contribution/indemnity bar here.

### a)   All state common law and HSAA claims against M&E for indemnity and/or contribution for Plaintiff's investigation costs related to the 1680 Property are barred

The Hortmans and the Kims do not dispute, and the Court agrees, that the requested contribution/indemnity bar should apply to all claims against M&E for indemnity and/or

16

contribution for money owed to Plaintiff for its past investigative costs related to the 1680 Property. These costs were specifically contemplated by the proposed settlement agreement and clearly fall within the purview of California Code of Civil Procedure sections 877 and 877.6. The bar also applies any future claims by Plaintiff for any additional investigation and/or cleanup costs because Plaintiff's lawsuit specifically contemplated the possibility of such costs. Such claims are unlikely, however, because there is no evidence suggesting that the 1680 Property requires additional investigation and/or cleanup, and Plaintiff has sold the 1680 Property.

Accordingly, the Court directs the parties to file notice of dismissal of the following claims:

- Plaintiff's state common law and HSAA claims against M&E only. (SAC ¶¶ 66–122.)

- The Kims' Third-Party Claims for equitable indemnity against M&E (second claim for relief), for indemnity/contribution under HSAA against M&E (third claim for relief), and for contribution under California Civil Code section 1432 (fifth claim for relief). (Doc. 115 ¶¶ 12–23, 27–29.)

- The Hortmans' Crossclaims for indemnity/contribution under the HSAA (third cross-claim for relief), for contribution under California Civil Code section 1432 (fourth cross-claim for relief), and for equitable indemnity (fifth cross-claim for relief). (Doc. 129 ¶¶ 48–59.)

- Defendant Angela Hong's cross claims for equitable indemnity against M&E (second claim for relief), for indemnity/contribution under HSAA against M&E (third claim for relief), and for contribution under California Civil Code section 1432 against M&E (fifth claim for relief). (Doc. 140 ¶¶ 34–45, 49–51.)

**b)** **All state common law and HSAA claims against M&E by non-parties not provided notice of this 'good faith settlement' determination are not barred**

"[O]nly those non-parties with constitutionally sufficient prior notice will be bound by a 'good faith settlement' determination[.]" *City of Emeryville*, 621 F.3d at 1266; *see also Gackstetter*, 135 Cal. App. 4th at 1273 ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard."). Interpreting this notice requirement, the Court clarifies that this good faith settlement determination does not bar other adjacent landowners that are not a party to the present lawsuit from bringing claims against M&E related to investigation and/or cleanup of their properties. The Court also clarfies that current and future owners of the 1680 Property, who are not a party to the present lawsuit, are not barred from bringing state common law and HSAA claims against M&E related to any additional investigation and cleanup of the 1680 Property that may arise.

**c)** **The Kims' state common law tort claims related to the investigation and cleanup of their own 1654 Property are not barred**

In their opposition, the Kims express concern that the requested contribution/indemnity bar would also bar their state common law tort claims related to the contamination, investigation, and cleanup of their 1654 Property. (Doc. 157 at 28–31.) This concern is based on the Kims' assertion that pollution from 1718 Property migrated west, contaminating both Plaintiff's 1680 Property and the Kims' 1654 Property. (*Id.*) However, the Court need not weigh the merits of these claims at this juncture.

First, in the Kim Reply, M&E concedes that it does not intend to bar the Kims' state common law claims related to the contamination, investigation, and cleanup of the Kims' 1654 Property. (Doc. 163 at 11.) Second, the Court finds that the proposed settlement agreement only contemplates costs associated with the investigation of Plaintiff's 1680

Property and, therefore, that claims related to the investigation and/or cleanup of the other two properties survive this good faith settlement determination.

This result is consistent with the Ninth Circuit's ruling in *City of Emeryville*, which involved the cleanup of two separate sites. 621 F.3d at 1266. There, the Ninth Circuit panel determined that the parties had no belief or expectation that it was resolving "site B" liability when it executed the "site A" settlement. *Id.* Therefore, any claims related to site B were not barred by the district court's good faith settlement determination. *Id.* The same is true here. The proposed settlement agreement only contemplates liability for the investigation of the 1680 Property. Claims regarding the investigation and cleanup of the 1654 Property or the 1718 Property are not barred.

**B.** **The Proposed Settlement Agreement Reflects an Equitable Allocation of Costs under CERCLA, Barring Certain Claims for Indemnity and/or Contribution Against M&E**

**1.** **The Equitable Allocation of Costs**

As stated above, the Ninth Circuit has held that "a district court has discretion under § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties in a contribution action." *AmeriPride Servs. Inc.*, 782 F.3d 474 at 487. However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA. *Id.* at 488. "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

District courts also weigh the "Gore Factors" when considering the equitable allocation of costs. The "Gore Factors" applicable to the present case are the parties' contribution and involvement in the generation, treatment, storage, or disposal of the hazardous waste and the degree of care exercised by the parties with respect to the hazardous waste concerned. *TDY Holdings, LLC*, 885 F.3d 1142 at 1146, n. 1.

For the same reasons discussed at length above (*see* III.A.1), the Court determines that the proposed settlement agreement is an equitable allocation of costs based on the

19

information available to the court at this time.  Here, M&E has agreed to pay $25,000, approximately 13.5% percent, of Plaintiff's total recovery (Doc. 147-2 at 3) even though it has never operated a polluting dry-cleaning business at the 1718 Property (Doc. 147 at 20). In other words, applying the Gore Factors, M&E's contribution and involvement in the generation, treatment, storage, or disposal of the hazardous waste is zero, and M&E has exercised care by not polluting its property and others with toxic dry-cleaning chemicals. It is therefore within the Court's discretion to approve M&E's $25,000 settlement.

Nevertheless, the Kims argue adamantly that M&E is strictly liable for the pollution under CERCLA as the current owner of the 1718 Property.  (Doc. 157 at 20-27.)  The Kims present scientific evidence (an expert report) that the 1718 Property is the sole source of the contamination and, therefore, that M&E's share of the liability is greater than the amount of the settlement.  (*Id.*)  While the Court agrees that a current landowner can be held strictly liable for past pollution emanating from its property, the Court need not decide the merits of Plaintiff's CERCLA claims at this juncture.  It is within the Court's discretion to allocate settlement costs as it sees fit.  42 U.S.C. § 9613(f)(1); *AmeriPride Services, Inc.*, 782 F.3d at 487.

Here, M&E is contributing $25,000 for pollution that the parties agree it did not cause.  Thus, the Court finds that the contemplated settlement is fair and reasonable under CERCLA.

### 2.    The Scope of Contribution Protection Under CERCLA

Both the Hortmans and the Kims contend that the contribution/indemnity bar requested by M&E and Plaintiff is overbroad.  As stated above, the Court is not convinced that the bar requested by M&E is as broad sweeping as the Hortmans and the Kims suggest. Nevertheless, the Court clarifies the permissible scope of the requested contribution/indemnity bar under CERCLA here.

20

### a)    All claims against M&E for indemnity and/or contribution to Plaintiff for costs related to the 1680 Property are barred

The Hortmans and the Kims do not dispute, and the Court agrees, that the requested contribution/indemnity bar should apply to all claims against M&E for indemnity and/or contribution for money owed to Plaintiff under CERCLA for its investigative costs related to the 1680 Property.  Accordingly, the Court directs the parties to file notice of dismissal of the following claims:

- Plaintiff's CERCLA claims against M&E only.  (Doc. 114 ¶¶ 47–65.)
- The Kims' Third-Party Claims for contribution under CERCLA § 113 against M&E (first claim for relief) and for federal declaratory relief against M&E (fourth claim for relief).  (Doc. 115 ¶¶ 7–11, 24–26.)
- The Hortmans' Crossclaims for contribution under CERCLA against M&E (first cross-claim for relief) and for declaratory relief under federal law against M&E (second cross-claim for relief).  (Doc. 129 ¶¶ 37–47.)
- Defendant Angela Hong's cross claims for contribution under CERCLA § 113 against M&E (first claim of relief) and for federal declaratory relief against M&E (fourth claim for relief).  (Doc. 140 ¶¶ 29–33, 46–48.)

Plaintiff is also barred from filing additional claims against M&E stemming from the alleged contamination of the 1680 Property should Plaintiff somehow incur additional response costs.

### b)    Claims by non-parties not provided notice of this 'good faith settlement' determination are not barred

The Ninth Circuit has made clear that a CERCLA contribution bar does apply to parties unaware of the prior settlement negotiations or within constructive notice of the CERCLA contribution bar.  *City of Emeryville*, 621 F.3d at 1265.  Therefore, the Court clarifies that the proposed settlement does not bar other adjacent landowners that are not a party to the present lawsuit from bringing CERCLA claims against M&E related to investigation and/or cleanup of their separate properties.  The Court also clarifies that

21

current and future owners of the 1680 Property, who are not a party to the present lawsuit, are not barred from bringing CERCLA claims against M&E for any additional investigation and cleanup costs associated with the 1680 Property.

> c)   **The Kims' claims related to the investigation and cleanup of their 1654 Property are not barred**

The Ninth Circuit has also made clear that a contribution bar should not extend beyond "matter[s] expressly contemplated by the parties in entering into the [] [s]ettlement." *City of Emeryville*, 621 F.3d at 1264. Here, the proposed settlement agreement only contemplates liability for Plaintiff's investigation costs related to the 1680 Property. For this reason, the Court clarifies that nothing bars the Kims from pursuing CERCLA claims related to the investigation and cleanup of their own 1654 Property.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS** M&E's Motion but clarifies the permissible scope of the requested contribution/indemnity bar as detailed above.


**IT IS SO ORDERED.**

DATE:  November 16, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:20-cv-00234-RBM-DEB