1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company,

Plaintiff,

v.

SUZY CLEANERS, an organization, et al.,

Defendants.

Case No.:  3:20-cv-00234-RBM-DEB

**ORDER GRANTING JOINT MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**

**[Doc. 146]**

19

20

21

22

23

24

25

26

27

28

This consolidated action arises from the alleged environmental contamination of the soil beneath the Valley Plaza shopping center in Escondido, California.  Plaintiff Pacific Resources Associates LLC ("Plaintiff"), who previously owned a storefront in the shopping center, seeks relief against the former and current owners and operators of two dry-cleaning businesses located in the same shopping center for allegedly contaminating the soil with perchloroethylene ("PCE"), a chlorinated solvent commonly used in the dry-cleaning industry.

Defendants Angela Hong, Howard Cho (on behalf of himself and Defendant Angela K. Cho, now deceased), and Jeong-Soon Long (collectively, the "Settling Defendants") have reached a tentative settlement agreement with Plaintiff and now move this Court to

1

1 approve the settlement as made in good faith in accordance with California Code of Civil

2 Procedure sections 877 and 877.6 ("Motion").  (Doc. 146.)  Additionally, the Settling

3 Defendants seek an order barring all existing and future claims against them for indemnity

4 and/or contribution for the alleged PCE contamination.  (*Id.*)  Plaintiff joined the Settling

5 Defendants' Motion.  (Doc. 148.)

6 Defendants Kim Hortman Buhler (as administrator and executor of the Estate of

7 Barbara Hortman) and Kim Hortman Buhler and Norman Alton Hortman III (as trustees

8 of The Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2,

9 1985) (collectively, the "Hortmans") do not oppose the good-faith settlement

10 determination but contend that the requested contribution/indemnity bar is overbroad

11 ("Opposition").  (Doc. 151.)  The Hortmans request that the Court limit the scope of the

12 requested bar.  (*Id.*)

13 On August 7, 2023, the Settling Defendants filed their Reply in Support of Joint

14 Motion for Determination of Good Faith Settlement ("Reply").  (Doc. 153.)

15 After careful consideration, the Court **GRANTS** the Settling Defendants' Motion.

16 ## I.   BACKGROUND

17 **A.   The Properties**

18 **1.   The 1680 Property**

19 Plaintiff owned the property located at 1680 East Valley Parkway, Escondido,

20 California 92027, a storefront in the Valley Plaza shopping center, from February 12, 2001

21 until November 2022 (the "1680 Property").  (Doc. 114, Second Amended Complaint

22 ("SAC"), ¶ 33.)

23 **2.   The 1654 Property**

24 The Settling Defendants are former and current operators of the dry-cleaning

25 business located at 1654 East Valley Parkway, Escondido, CA 92027 (the "1654

26 Property"), another storefront in the Valley Plaza shopping center.  (Doc. 146 at 8.)  The

27 Settling Defendants have never held an ownership interest in the 1654 Property.  (*Id.*)  The

28 1654 Property is positioned west of Plaintiff's 1680 Property.  (Doc. 153 at 4.)

### 3.     The 1718 Property

The Hortmans owned and operated another dry-cleaning business located at 1718 East Valley Parkway, Escondido, CA 92027 (the "1718 Property"), a third storefront in the Valley Plaza shopping center, from 1987 to 1999.  (Doc. 146 at 9; SAC ¶ 14.)  The 1718 Property is positioned east of Plaintiff's 1680 Property.  (Doc. 153 at 4.)

## B.     The Settling Defendants

The Settling Defendants are three of many operators of the dry-cleaning business located at the 1654 Property – formerly called "Hoffa Cleaners" and now called "Suzy Cleaners."  (Doc. 146 at 8, 10.)  The 1654 Property has been home to a dry-cleaning business since 1972.  (*Id.* at 9)

### a)     Howard and Angela Cho

Settling Defendants Howard and Angela Cho operated Hoffa Cleaners from approximately November 1996 to December[1] 1998—approximately two years or 25 months.  (Declaration of Howard Cho ("Cho Decl.") ¶ 2 [Doc. 146-5]; Doc. 146 at 22.)  Mr. Cho cannot remember exactly which chemicals or solvents he used during his operation of Hoffa Cleaners.  (Cho Decl. ¶ 3.)  During his tenure at Hoffa Cleaners, Mr. Cho used AAD Distribution and Drycleaning Services, Inc. to properly dispose of all chemicals.  (*Id.* ¶ 4.)  During Mr. Cho's tenure at Hoffa Cleaners, no release, leak, or spill of PCE occurred, and neither Mr. Cho nor his wife were identified by the San Diego Regional Water Board as a "responsible party."  (*Id.* ¶¶ 5–6.)  Mr. Cho's wife, Angela Cho, passed away in 2011.  (*Id.* ¶ 7.)  Mr. Cho is retired, and his only source of income is Social Security.  (*Id.* ¶ 9.)  Mr. Cho does not have liability insurance.  (*Id.* ¶ 8.)

---

[1] There is a discrepancy between Mr. Cho's declaration and the moving brief.  Mr. Cho declared that he ceased operations of Hoffa Cleaners in September 1998, but the moving brief indicates that he ceased operations in December 1998.  This discrepancy does not meaningfully impact the Court's analysis.

3

1

         **b)**    **Jeong-Soon Long**

2         Settling Defendant Jeong-Soon Long operated Suzy Cleaners from June 1, 1999 to

3  December 24, 2001—approximately two and a half years.  (Declaration of Jeong-Soon

4  Long ("Long Decl.") ¶¶ 1, 4 [Doc. 146-6].)  Ms. Long applied for the purchase of a new

5  Bergparma, Model D-335, 35 LB capacity, closed-loop dry-cleaning machine that captures

6  and distills PCE.  (*Id.* ¶ 2–3.)  Ms. Long's application was granted in March of 1999.  (*Id.*)

7  All PCE-related hazardous materials were removed from the store and disposed of by a

8  hazardous waste disposal company.  (*Id.* ¶ 4.)  Ms. Long is currently employed as a

9  seamstress at Barona Casino, but she hopes to retire next year.  (*Id.* ¶ 10.)  Her seamstress

10  salary is $46,000 per year, and when she retires, she will receive approximately $2,400 per

11  month from social security.  (*Id.* ¶ 11.)  Ms. Long attempted to have her insurance company

12  from many years ago defend her, but they declined.  (*Id.* ¶ 12.)

13

         **c)**    **Angela Hong**

14         Settling Defendant Angela Hong is the sole proprietor of Suzy Cleaners.

15  (Declaration of Anegla Hong ("Hong Decl.") ¶ 2 [Doc. 146-2].)  When Ms. Hong acquired

16  the business in 2002, the dry-cleaning system in place was a Bergparma Model D-335

17  closed-loop system, which captures, distills, and filters PCE.  (*Id.* ¶ 3; Long Decl. ¶¶ 2–3.)

18  In 2013, Ms. Hong replaced the Bergparma system with a new InnoClean closed-loop dry

19  cleaning system, which does not use PCE.  (Hong Decl. ¶ 4.)  The recycling and collection

20  company Safety-Kleen has disposed of all used solvents since Ms. Hong acquired the

21  business.  (*Id.* ¶ 5.)  During her tenure, no releases, leaks, or spills of PCE have occurred.

22  (*Id.* ¶ 6.)  Ms. Hong does not receive any wages from Suzy Cleaners, and her only other

23  source of income is social security.  (*Id.* ¶ 11.)  Ms. Hong was not able to identify any

24  insurance policy that would provide coverage for Plaintiff's claims.  (*Id.* ¶ 7.)

25  **C.**    **Plaintiff's Allegations**

26         Plaintiff alleges that all former and current operators of the dry-cleaning businesses

27  located at the 1654 Property (including the Settling Defendants) and the 1718 Property

28  (including the Hortmans) released PCE into the soil beneath the properties, which then

4

1  migrated and contaminated the soil beneath Plaintiff's 1680 Property.  (SAC ¶¶ 36, 39, 41.)

2  Plaintiff alleges that it has incurred substantial response costs and will continue to incur

3  response, removal, and remediation costs in the future.  (SAC ¶ 40, 42–46.)  Notably,

4  however, Plaintiff no longer owns the 1680 Property.  (SAC ¶ 33.)

5  **D.      Procedural History**

6        Plaintiff initially filed this case on February 6, 2020—nearly four years ago.  (Doc.

7  1.)  Plaintiff amended its complaint on February 3, 2023 (Doc. 83) and on May 1, 2023

8  (Doc. 114).  Plaintiff's SAC asserts three causes of action under the federal Comprehensive

9  Environmental Response, Compensation and Liability Act ("CERCLA"), one cause of

10  action under California's Hazardous Substances Account Act ("HSAA"), and nine

11  additional tort and equitable causes of action under California state common law.  (SAC

12  ¶¶ 47–122.)  Each cause of action is premised on the alleged contamination of Plaintiff's

13  1680 property with PCE.  (*Id.*)

14        Plaintiff and the Settling Defendants have reached a tentative settlement agreement.

15  (Declaration of Grant R. Olsson ("Olsson Decl."), ¶ 4, Ex. 1 ("Settlement Agreement")

16  [Doc. 146-1].)  The proposed settlement agreement includes the following material terms:

17        • The Settling Defendants shall deliver to Plaintiff's counsel the sum of

18           $18,000.  Angela Hong shall contribute $5,000, Howard Cho shall contribute

19           $6,500, and Jeong-Soon Long shall contribute $6,500.  (Settlement

20           Agreement at 2.)

21        • "[The Settlement] Agreement is subject to, and expressly contingent upon, a

22           determination that the settlement contemplated by this Agreement is a good

23           faith settlement pursuant to California Code of Civil Procedure § 877.6 and

24           various 9th Circuit case law as they pertain to CERCLA liability or, *in the*

25           *alternative*, entry of an order dismissing all of Pacific's claims in the action

26           with prejudice (either before or within 60 days of a Court's denial of a good

27           faith motion)." (*Id.* (emphasis added).)

28  Plaintiff and the Settling Defendants executed the settlement agreement on July 7, 2023.

1  (*Id.* at 7.)

2  **E.    The Settling Defendants' Motion**

3      In accordance with the material terms outlined above, on July 13, 2023, the Settling

4  Defendants filed the present Motion.  In their Motion, the Settling Defendants request a

5  "determination and order that the settlement entered into with [Plaintiff] has been made in

6  good faith within the meaning of Code of Civil Procedure Section 877.6 and that such

7  settlement will bar all such existing or future claims against [the Settling Defendants] for

8  indemnity and/or contribution, equitable, partial or total."  (Doc. 146 at 2.)  The Settling

9  Defendants' Motion is made on the grounds that the agreed-to settlement meets the test for

10  good faith set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488

11  (1985). (*Id.* at 3.)  Additionally, the Settling Defendants assert that the agreed-to settlement

12  is fair, reasonable, and consistent with the objectives and policy underlying CERCLA,

13  which also permits contribution protection for the Settling Defendants. (*Id.* at 10.)  On July

14  25, 2023, Plaintiff joined the Settling Defendants' Motion.  (Doc. 148.)  On August 1,

15  2023, Defendants and Third-Party Claimants Guhn Y. Kim, Yun Soon Kim, and the Kim

16  Family Trust of 2017 (collectively, the "Kims")—the owners of the 1654 Property—filed

17  notice of their non-opposition to the Settling Defendants' Motion.  (Doc. 152.)

18  **F.    The Hortmans' Opposition**

19      On July 31, 2023, the Hortmans filed their Opposition.  (Doc. 151.)  The Hortmans

20  indicate they do not oppose the request for a good faith determination but contend that the

21  settlement agreement's contribution and indemnity bar is "overly-broad" and "inconsistent

22  with the terms of settlement."  (*Id.* at 1.)  The Hortmans request that this Court limit any

23  bar to claims for contribution and indemnity to claims related to Plaintiff's past

24  investigation costs for the 1680 Property only.  (*Id.* at 1–2.)

25            **II.    LEGAL STANDARD**

26  **A.    Supplement Jurisdiction and Choice of Law**

27      This Court has subject matter jurisdiction over Plaintiff's CERCLA claims pursuant

28  to 28 U.S.C. § 1331 because the causes of action alleged herein arise under the

1    Constitution, laws, or treaties of the United States, or are supplemental thereto.  *State of*
2    *Cal. on Behalf of California Dep't of Health Servs. v. B & R Davis Fertilizers, Inc.*, 29
3    F.3d 634 (9th Cir. 1994).  This Court has supplemental jurisdiction over Plaintiff's state
4    law claims pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus
5    of operative facts as Plaintiff's federal CERCLA claims.  (*Id.*)

6        "When a district court sits in diversity, or hears state law claims based on
7    supplemental jurisdiction, the court applies state substantive law to the state law claims."
8    *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir.
9    2011).  The Ninth Circuit has held that California Code of Civil Procedure section 877
10   constitutes substantive law and, therefore, that federal courts look to California law to
11   decide whether a settlement was made in good faith with respect to the state law tort claims.
12   *Id.* (citing *Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir.1990)).
13   Although California Code of Civil Procedure section 877.6 is the procedural mechanism
14   for section 877, "the case law is clear that state settlement provisions amount to substantive,
15   rather than purely procedural, law."  *Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477–78
16   (C.D. Cal. 1997).

17   **B.    California Code of Civil Procedure Sections 877 and 877.7**

18       Plaintiff and the Settling Defendants seek a determination that the proposed
19   settlement has been made in good faith pursuant to California Code of Civil Procedure
20   sections 877 and 877.6.  These provisions apply to Plaintiff's state law claims.  *Mason &*
21   *Dixon Intermodal, Inc.*, 632 F.3d at 1060; *Slaven*, 958 F. Supp. at 1477–78.

22       Section 877 governs the effect of a release of claims given "in good faith before
23   verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the
24   same tort, or to one or more other co-obligors mutually subject to contribution rights."  Cal.
25   Civ. Proc. Code § 877.  The good faith settlement "shall not discharge any other such party
26   from liability unless its terms so provide, but it shall reduce the claims against the others
27   in the amount stipulated by the release…."  § 877(a).  Further, "[i]t shall discharge the party
28   to whom it is given from all liability for any contribution to any other parties."  § 877(b).

1    "[A] settling party may give notice of settlement to all parties and to the court,

2    together with an application for determination of good faith settlement and a proposed

3    order.  The application shall indicate the settling parties, and the basis, terms, and amount

4    of the settlement."  § 877.6(a). "A determination by the court that the settlement was made

5    in good faith shall bar any other joint tortfeasor or co-obligor from any further claims

6    against the settling tortfeasor or co-obligor for equitable comparative contribution, or

7    partial or comparative indemnity, based on comparative negligence or comparative fault."

8    § 877.6(c).

9        In other words, "[s]ection 877 establishes that a good faith settlement bars other

10   defendants from seeking contribution from the settling defendant, but at the same time

11   provides that the plaintiff's claims against the other defendants are to be reduced by the

12   amount of consideration paid for the settlement.  Thus, while a good faith settlement cuts

13   off the right of other defendants to seek contribution or comparative indemnity from the

14   settling defendant, the non-settling defendants obtain in return a reduction in their ultimate

15   liability to the plaintiff." *Abbott Ford, Inc. v. Superior Ct.*, 43 Cal. 3d 858, 871–73 (1987)

16   (citations and quotations omitted).  "[T]he provisions of sections 877 and 877.6—

17   governing the effect that a settlement agreement has on a settling defendant's potential

18   liability to other defendants for contribution or comparative indemnity—have two major

19   goals: the equitable sharing of costs among the parties at fault and the encouragement of

20   settlements." *Id.* at 871–72.

21       "The issue of the good faith of a settlement may be determined by the court on the

22   basis of affidavits served with the notice of hearing, and any counteraffidavits filed in

23   response…." *Id.* at § 877.6(b).  To determine whether a settlement had been made in good

24   faith, and therefore bars all future claims by any tortfeasor for contribution or indemnity,

25   California courts consider the factors identified by the California Supreme Court in *Tech-*

26   *Bilt, Inc.*:

27           [T]he intent and policies underlying section 877.6 require that a number of
             factors be taken into account including [1] a rough approximation of
28

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.  Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499–500 (1985).  "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement."  *Id.*

Further, "[t]he party asserting the lack of good faith shall have the burden of proof on that issue."  § 877.6(d).  The non-settling party is "permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute."  *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500 (citations omitted).  "If contested, declarations by the non-settlor should be filed which in many cases could require the moving party to file responsive counter declarations to negate the lack of good faith asserted by the non-settling contesting party."  *City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1261–62 (Ct. App. 1987) (emphasis added).

Should a court grant an application for a good faith settlement determination under California Code of Civil Procedure sections 877 and 877.6, "only those non-parties with constitutionally sufficient prior notice will be bound by a 'good faith settlement' determination[.]"  *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010); *see also Singer Co. v. Superior Court*, 179 Cal. App. 3d 875, 890–91 (1986); *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006) ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard.").   In other words, the scope of the contribution/indemnity bar is not unlimited.  *Hartford Accident & Indem. Co. v. Superior*

9

1    *Ct.*, 29 Cal. App. 4th 435, 441 (1994) ("[T]he focus of the statutory scheme is on

2    settlements by a plaintiff with one of several parties alleged to be jointly liable for the same

3    tortious injury."); *see also Arizona Pipeline Co. v. Superior Ct.*, 22 Cal. App. 4th 33, 42

4    (1994); *West v. Superior Ct.*, 27 Cal. App. 4th 1625, 1636–37 (1994); *C. L. Peck*

5    *Contractors v. Superior Ct.*, 159 Cal. App. 3d 828, 831 (Ct. App. 1984).

6            Determinations of good faith made under California Code of Civil Procedure

7    sections 877 and 877.6 apply to claims asserted under the HSAA in addition to California

8    state common law claims. *Fullerton Redevelopment Agency v. S. Cal. Gas Co.*, 183 Cal.

9    App. 4th 428, 432 (2010).

10   **C.    CERCLA**

11           Plaintiff and the Settling Defendants also seek approval of their settlement

12   agreement and an order providing it with contribution protection under CERCLA.   42

13   U.S.C. § 9613(f).  In considering this request, the Court first reviews CERCLA's statutory

14   framework.

15           Congress enacted CERCLA "in response to the serious environmental and health

16   risks posed by industrial pollution." *Burlington N. & Santa Fe Ry. Co. v. United States*,

17   556 U.S. 599, 602 (2009).  CERCLA "imposes *strict liability* on four categories of

18   potentially responsible parties (PRPs) for the cleanup costs of an environmental hazard,

19   *even if the person did not contribute to the contamination*." *Chubb Custom Ins. Co. v.*

20   *Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (emphasis added).  "CERCLA

21   liability is joint and several, meaning that a responsible party may be held liable for the

22   entire cost of cleanup even where other parties contributed to the contamination.  The party

23   saddled with the cleanup costs may, in turn, sue other potentially responsible parties for

24   contribution." *California Dep't of Toxic Substances Control v. Hearthside Residential*

25   *Corp.*, 613 F.3d 910, 912 (9th Cir. 2010); *see also AmeriPride Servs. Inc. v. Tex. E.*

26   *Overseas Inc.*, 782 F.3d 474, 480 (9th Cir. 2015); 42 U.S.C. § 9607(a); 42 U.S.C.

27   9613(f)(1).

28           There are four categories of potentially responsible parties ("PRPs"):

…(1) the owner and operator of a vessel or a facility,[2] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment … of hazardous substances … , and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities … from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…

42 U.S.C. § 9607.  PRPs are responsible for "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe...; (B) any other necessary costs of response incurred by any other person…; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study…."  42 U.S.C. § 9607(a)(4)(A)–(D).

CERCLA's otherwise harsh, strict-liability scheme encourages settlement by providing so-called "contribution protection" to "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement[.]" 42 U.S.C. § 9613(f)(2).  In other words, CERCLA prevents parties settling with the United States or a State from later being sued for contribution by non-settling parties. *Id.*  "Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." *Id.*  CERCLA is silent as to whether contribution protection and the reduction of the remaining liability applies to settlement agreements between private parties.

In the absence of express authority, the Ninth Circuit looks to another CERCLA provision for the authority to allocate costs and afford contribution protection in settlements between private parties: "In resolving contribution claims, the court may

---

2 "The term 'facility' means … any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located… ." 42 U.S.C. 9601(9).

allocate response costs among liable parties *using such equitable factors as the court determines are appropriate*." 42 U.S.C. § 9613(f)(1) (emphasis added). In *AmeriPride Services, Inc.*, the Ninth Circuit held that "a district court has discretion under [this provision] to determine the most equitable method of accounting for settlements between private parties in a contribution action." 782 F.3d at 487. However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA. *Id.* at 488. "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

When considering the equitable allocation of costs, courts weigh the so-called "Gore Factors." They are "(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment." *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146, n. 1 (9th Cir. 2018) (internal quotation omitted).

While districts courts are free to grant settling parties contribution protection, the scope of permissible contribution protection is limited. "CERCLA's policy of encouraging settlements by authorizing contribution protection to settling parties should not be construed in a manner that ambushes persons…who had no connection with, and no responsibility for, the pollution on the site at issue in the settlement…." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1264 (9th Cir. 2010). "[T]he overwhelming majority of courts that have imposed or enforced a CERCLA contribution bar in a private-party settlement have done so only where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who

1    otherwise had at least constructive notice that their contribution claims stood to be

2    extinguished." *Id.* at 1265.  A contribution bar should not extend beyond "matter expressly

3    contemplated by the parties in entering into the [] [s]ettlement." *Id.* at 1264.

### III.   DISCUSSION

**A.     The Proposed Settlement Agreement is a Good Faith Settlement Agreement Pursuant to California Code of Civil Procedure Sections 877 and 877.6, Barring Certain Claims for Indemnity and/or Contribution Against the Settling Defendants**

####     1.     The *Tech-Bilt, Inc.* Factors

9    The first four *Tech-Bilt, Inc.* factors are the most important.  They are "[1] a rough

10   approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the

11   amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and

12   [4] a recognition that a settlor should pay less in settlement than he would if he were found

13   liable after a trial." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

14   Here, a rough approximation of Plaintiff's total recovery is $185,000 in

15   investigation/response costs because Plaintiff no longer owns the 1680 Property and,

16   therefore, will not continue to incur costs.  (Doc. 138 at 2; SAC ¶ 33.)  Thus, the Settling

17   Defendants' collectively have agreed to pay approximately ten percent of Plaintiff's total

18   recovery.  As set forth below, the Court is persuaded that this allocation is fair based on

19   the evidence presented by each of the Settling Defendants, especially given the black letter

20   law that a settlor should pay less in settlement than he would after trial and that the Court's

21   evaluation is to be made based on information available at the time of settlement (now).

22   *See Tech-Bilt, Inc.*, 38 Cal. 3d 488 at 499–500.

23   "Other relevant considerations include [5] the financial conditions and insurance

24   policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or

25   tortious conduct aimed to injure the interests of nonsettling defendants." *Tech-Bilt, Inc.*,

26   38 Cal. 3d at 499–500.  As set forth below, the Court is also persuaded that these equitable

27   factors require the Court to render issue a food-faith settlement determination and shield

28

3:20-cv-00234-RBM-DEB

1  each of the Settling Defendants from claims for contribution/indemnity to the extent
2  permissible by law.  *Id.*

3        **a)**     **Howard and Angela Cho**

4        Settling Defendants Howard and Angela Cho operated the dry-cleaning business
5  located at the 1654 Property for only two of more than 50 years of operation (approximately
6  four percent of the time).  (Cho Decl. ¶ 2.)  Further, Mr. Cho declared under penalty of
7  perjury that AAD Distribution and Drycleaning Services, Inc. properly disposed of all
8  chemicals during his tenure operating Hoffa Cleaners, that there were no spills or leaks
9  during his operation, and that the San Diego Regional Water Board did not identify him or
10  his wife as a "responsible party."  (Cho Decl. ¶¶ 4–6.)  Therefore, any alleged PCE
11  contamination caused by the Chos, if any, was likely *de minimus*.  Mr. Cho also declared
12  that his wife has passed away, that he is retired, that his only source of income is social
13  security, and that he does not have insurance coverage for this matter.  (*Id.* ¶¶ 7-9.)  Thus,
14  applying the equitable factors set forth in *Tech-Bilt, Inc.*, the Court finds that the Plaintiff's
15  settlement with the Chos was made in good faith and bars future claims for indemnity
16  and/or contribution against the Chos to the extent permitted by law.

17        **b)**     **Jeong-Soon Long**

18        Settling Defendant Jeong-Soon Long operated the dry-cleaning business located at
19  the 1654 Property for only two and a half years of more than 50 years of operation.  (Long
20  Decl. ¶¶ 1, 4–5.)  Ms. Long purchased a Bergparma, Model D-335 closed-loop dry-
21  cleaning machine which captured, distilled, and filtered PCE, and a hazardous waste
22  disposal company disposed of all chemicals during her tenure.  (*Id.* ¶¶ 2, 4.)  Therefore,
23  any alleged PCE contamination caused by Ms. Long was likely *de minimus*.  Ms. Long
24  also declared that she earns only $46,000 per year as a seamstress and that she hopes to
25  retire next year.  (*Id.* ¶ 10.)  Upon retirement, she will receive only $2,400 per month in
26  social security.  (*Id.* ¶ 11.)  Further, she does not have insurance that covers this matter.
27  (*Id.* ¶ 12.)  Thus, applying the equitable factors set forth in *Tech-Bilt, Inc.*, the Court finds

28

1   that the Plaintiff's settlement with Ms. Long was made in good faith and bars any future

2   claims for indemnity/contribution against Ms. Long to the extent permitted by law.

3               **c)**     **Angela Hong**

4         Settling Defendant Angela Hong acquired the business in 2002 and used the

5   Bergparma Model D-335 closed-loop dry-cleaning system, which captures, distills, and

6   filters PCE.  (Hong Decl. ¶ 3; Long Decl. ¶ 2.)  Ms. Hong then replaced this system with

7   one that does not use PCE.  (Hong Decl. ¶ 4.)  Ms. Hong also uses the company Safety-

8   Kleen to properly dispose of chemicals.  (*Id.* ¶ 5.)   Therefore, any alleged PCE

9   contamination caused by Ms. Hong is likely *de minimus*.  Ms. Hong also declared that she

10   does not receive any wages from Suzy Cleaners, her only other source of income is social

11   security, and she does not have an insurance policy that will provide coverage for Plaintiff's

12   claims.  (*Id.* ¶¶ 7–11.)  Thus, the Court finds that the Plaintiff's settlement with Ms. Hong

13   was made in good faith and bars future claims for contribution/indemnity against Ms. Hong

14   to the extent permitted by law.

15         **2.**     **The Permissible Scope of the Requested Contribution/Indemnity Bar**

16              **Under California Code of Civil Procedure Sections 877 and 877.6**

17         In their Opposition, the Hortmans assert that the proposed settlement agreement is

18   unfair because it bars them from seeking indemnity or contribution for Plaintiff's future

19   costs.  (Doc. 151 at 1:20-22, 2:6-3:2.)  First, the Court notes that the Hortmans' concern is

20   unfounded because Plaintiff sold the 1680 Property in 2022 and likely will not accumulate

21   additional response costs. Nevertheless, the Court finds that California Code of Civil

22   Procedure Sections 877 and 877.6 bars future HSAA and state common law claims by

23   Plaintiff for any additional investigation and/or cleanup costs because Plaintiff has been

24   provided sufficient notice that it will be bound by the Court's good-faith settlement

25   determination. *City of Emeryville*, 621 F.3d at 1266.

26         The Hortmans also assert that the proposed contribution/indemnity bar is unfair

27   because it bars claims for indemnity and/or contribution against the Settling Defendants

28   for the Hortmans' potential liability to Defendant M&E Brothers, LLC ("M&E"), the

1 current owners of the 1718 Property, for the investigation and cleanup of the 1718

2 Property.[3]   (Doc. 151 at 3:4-15, 4:8-15.) First, the Court is not convinced that the bar

3 requested by the Settling Defendants is as broad sweeping as the Hortmans suggest.  The

4 terms of the executed settlement agreement suggest that the moving parties only intended

5 the contribution/indemnity bar to apply to Plaintiff's cost-recovery claims for the 1680

6 Property.  The settlement agreement provides for an alternative remedy: "entry of an order

7 dismissing all of Pacific's claims in the action with prejudice against all Defendants."

8 (Settlement   Agreement   at   2.)       Had   the   Settling   Defendants   intended   the

9 indemnity/contribution bar to extend beyond Plaintiff's cost-recovery claims for the 1680

10 Property, this alternative remedy would not be sufficient.  Second, the Court finds that the

11 proposed settlement agreement only contemplates costs associated with the investigation

12 of Plaintiff's 1680 Property and, therefore, that claims related to the investigation and/or

13 cleanup of the 1718 Property (like those asserted in Case No. 22-cv-01892-RBM-DEB)

14 survive this good faith settlement determination.  This result is consistent with the Ninth

15 Circuit's ruling in *City of Emeryville*, which involved the cleanup of two separate sites.

16 621 F.3d at 1266.  There, the Ninth Circuit determined that the parties had no belief or

17 expectation that it was resolving "site B" liability when it executed the "site A" settlement

18 agreement.  *Id.*   Therefore, any claims related to site B were not barred by the district

19 court's good faith settlement determination.  *Id.*  The same is true here.  The proposed

20 settlement agreement only contemplates liability for the investigation of the 1680 Property.

21 Claims regarding the investigation and cleanup of the 1718 Property (like those asserted in

22 Case No. 22-cv-01892-RBM-DEB) are not barred.

23

24

25

26

27 [3] In a separate action, M&E alleged that the Hortmans are responsible for the contamination
of the soil beneath the 1718 Property with PCE.  (Case No. 22-cv-01892-RBM-DEB, Doc.

28 13.)

**B.    CERCLA**

      **1.    The Equitable Allocation of Costs**

As stated above, the Ninth Circuit has held that "a district court has discretion under § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties in a contribution action." *AmeriPride Servs. Inc.*, 782 F.3d 474 at 487. However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA. *Id.* at 488. "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

District courts also weigh the "Gore Factors" when considering the equitable allocation of costs. The "Gore Factors" applicable to the present case are the parties' contribution and involvement in the generation, treatment, storage, or disposal of the hazardous waste and the degree of care exercised by the parties with respect to the hazardous waste concerned. *TDY Holdings, LLC*, 885 F.3d 1142 at 1146, n. 1.

For the same reasons discussed at length above (see III.A.1), the Court determines that the proposed settlement agreement is an equitable allocation of costs under CERCLA. Applying the Gore Factors, the Settling Defendants' contribution and involvement in the generation, treatment, storage, or disposal of the hazardous waste is minimal, and it is therefore within the Court's discretion to approve the Settling Defendants' respective settlement figures.

      **2.    The Scope of the Requested Contribution/Indemnity Bar Under CERCLA**

In their Opposition, the Hortmans assert that the proposed settlement agreement is unfair because it bars them from seeking indemnity or contribution for Plaintiff's future costs. (Doc. 151 at 1:20-22, 2:6-3:2.) The Hortmans also assert that the proposed contribution/indemnity bar is unfair because it bars indemnity and/or contribution from the Settling Defendants for the Hortmans' liability to M&E for the investigation and cleanup of the 1718 Property. (Doc. 151 at 3:4-15, 4:8-15.) Once again, the Court notes that

1   Plaintiff sold the 1680 Property in 2022 and likely will not accumulate additional costs.

2   Further, the Ninth Circuit has also made clear that a CERCLA contribution bar should not

3   extend beyond "matter[s] expressly contemplated by the parties in entering into the []

4   [s]ettlement." *City of Emeryville*, 621 F.3d at 1264.  Here, Plaintiff's SAC expressly

5   contemplated the possibility additional investigation and/or cleanup costs associated with

6   the 1680 Property accumulated after the filing of the SAC.  Thus, applying the Ninth

7   Circuit's ruling in *City of Emeryville*, the Court finds that any future CERCLA claims by

8   Plaintiff against the Settlings Defendants for additional response costs related to the

9   contamination of the 1680 Property are barred because the possibility of additional costs

10  was specifically contemplated in Plaintiff's SAC.  On the other hand, the proposed

11  settlement agreement did not contemplate the Hortmans' potential CERCLA liability to

12  M&E for the investigation and cleanup of the 1718 Property.  Thus, any CERCLA claims

13  for contribution/indemnity related to the investigation/cleanup of the 1718 Property (like

14  those asserted in Case No. 22-cv-01892-RBM-DEB) are not barred.

### IV.   CONCLUSION

16      Based on the foregoing, the Court **GRANTS** the Settling Defendants' Motion but

17  clarifies the scope of the requested contribution/indemnity bar.  Each of Plaintiff's claims

18  against Defendants Angela Hong, Howard Cho (on behalf of himself and Defendant

19  Angela K. Cho, now deceased), and Jeong-Soon Long are dismissed:

20      1. Strict Liability Under CERCLA § 107—Recovery of Response Costs (SAC
21         ¶¶ 47–56)

22      2. Right of Contribution Under CERCLA § 113 (SAC ¶¶ 57–61)

23      3. Declaratory Relief Under CERCLA (SAC ¶¶ 62–65)

24      4. Contribution Under California Health & Safety Code § 25363(e) (SAC ¶¶ 66–
25         72)

26      5. Declaratory Relief Under CCP § 1060 (SAC ¶¶ 73–77)

27      6. Public Nuisance (SAC ¶¶ 78–86)

28      7. Private Nuisance (SAC ¶¶ 87–91)

8.  Negligence (SAC ¶¶ 92–96)

9.  Negligence Per Se (SAC ¶¶ 97–104)

10. Waste (SAC ¶¶ 105–109)

11. Trespass (SAC ¶¶ 110–114)

12. Equitable Indemnity (SAC ¶¶ 115–118)

13. Restitution (SAC ¶¶ 119–122)


**IT IS SO ORDERED.**

DATE:  November 16, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

19