1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13

PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company,

Plaintiff,

14

v.

15
16

SUZY CLEANERS, an organization, et al.,

Defendants.

Case No.:  3:20-cv-00234-RBM-DEB

**ORDER GRANTING THE HORTMAN DEFENDANTS' MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**

**[Doc. 175]**

17
18
19
20
21
22
23

Plaintiff Pacific Resources Associates LLC ("Plaintiff") previously owned a storefront in the Valley Plaza shopping center in Escondido, California.  Plaintiff seeks relief against the current and former owners and operators of two separate dry-cleaning businesses located in the shopping center for allegedly contaminating the soil beneath its property with perchloroethylene ("PCE").

24
25
26
27
28

Defendants Kim Hortman Buhler, as court appointed administrator and executor of the Estate of Barbara Hortman (the "Estate"), and Kim Hortman Buhler and Norman Alton Hortman, III, as trustees of The Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2, 1985 (the "Trust") (collectively, the "Hortman Defendants") have reached a tentative settlement agreement with Plaintiff and now move this Court for a good

faith settlement determination ("Motion"). (Doc. 175.) Specifically, the Hortman Defendants request that this Court issue an order confirming that the settlement agreement between Plaintiff and the Hortman Defendants was made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6 and is fair, reasonable, and consistent with the intent of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). (Doc. 175-1 at 6.)[1] The Hortman Defendants also request an order discharging them "from all liability for claims for implied [or] equitable indemnity, implied [or] equitable comparative contribution, indemnity or cost recovery under CERCLA [section] 107, indemnity or contribution under CERCLA [section] 113, indemnity or contribution under the Carpenter-Presley-Tanner Hazardous Substance Account Act ('HSAA) …, or for any other cause of action based upon comparative fault, indemnity[,] or otherwise arising from any alleged past negligence, act, omission, or misconduct of the [Hortman Defendants] in connection with the property located at 1680 East Valley Parkway, Escondido, California 92027 ('1680 Property') and the subject matter of this litigation." (*Id.*) The Hortman Defendants further request orders "[d]ismissing all claims asserted in the action by Plaintiff against the Hortmans, with prejudice, with Plaintiff and the Hortmans each bearing their own attorneys' fees and costs[,]" as well as "all claims, cross-claims and third-party claims asserted in the action by any other party against the [Hortman Defendants] related to the 1680 Property, with prejudice." (*Id.* at 7.)

Plaintiff joined the Hortman Defendants' Motion. (Doc. 179.) Likewise, Defendants Guhn Y. Kim, Yun Soon Kim, and the Kim Family Trust of 2017 (collectively, the "Kim Defendants") filed a statement of non-opposition to the Hortman Defendants' Motion. (Doc. 177.)

///

---

[1] The Court cites to the court-generated CM-ECF page number unless otherwise noted.

2

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  After careful consideration, the Court **GRANTS** the Hortman Defendants' Motion but clarifies the permissible scope of the requested contribution/indemnity bar.

# I.    BACKGROUND[2]

## A.    Statement of Facts

### 1.    Plaintiff and the 1680 Property

Plaintiff owned the property located at 1680 East Valley Parkway, Escondido, California 92027, a storefront in the Valley Plaza shopping center, from February 12, 2001 until November 2022 (the "1680 Property").  (Doc. 114, Second Amended Complaint ("SAC") ¶ 33; Doc. 175-1 at 7.)

### 2.    Defendant M&E, the Hortman Defendants, and the 1718 Property

Defendant M&E Brothers, LLC ("Defendant M&E") owns the property located at 1718 East Valley Parkway, Escondido, California 92027, another storefront in the Valley Plaza shopping center (the "1718 Property").  (Doc. 147 at 7; Doc. 175-1 at 7.)  The 1718 Property is located east of Plaintiff's 1680 Property.  (Doc. 153 at 4; Doc. 175-1 at 7.) There is a dispute of fact regarding who owned and operated the dry-cleaning business at the 1718 Property prior to M&E's ownership.  (*See* Declaration of Flor De Lys Barawid ("Barawid Decl.") ¶ 8 [Doc. 147-8] (stating the 1718 Property was previously home to a dry-cleaning business owned and operated by the Hortman Defendants); *but see* Doc. 175-1 at 9, 14–15 (denying that the Hortman Defendants owned and operated a dry-cleaning business on the 1718 Property).)

### 3.    The Kim Defendants and the 1654 Property

The Kim Defendants own the property located at 1654 East Valley Parkway, Escondido, California 92027, a third storefront in the Valley Plaza shopping center (the

---

[2] The facts and law summarize in this background section constitute the factual allegations and legal contentions of the parties and are not conclusions of fact and law by the Court.

1    "1654 Property"). (Doc. 147 at 9; Doc. 175-1 at 7.) The 1654 Property is located west of
2    Plaintiff's 1680 Property. (Doc. 153 at 4; Doc. 175-1 at 7.) The 1654 Property is currently
3    home to Suzy Cleaners. (Doc. 157 at 12; Doc. 175-1 at 7.)

4           **4.     Plaintiff's Allegations**

5           In its SAC, Plaintiff alleges that all former and current owners and operators of the
6    dry-cleaning businesses located at the 1654 Property and the 1718 Property (including the
7    Kims and the Hortmans) released PCE into the soil beneath the properties, which then
8    migrated and contaminated the soil beneath Plaintiff's 1680 Property. (SAC ¶¶ 36, 39, 41;
9    Doc. 175-1 at 8.) Plaintiff alleges that it has incurred and will continue to incur substantial
10   response, removal, and remediation costs. (SAC ¶¶ 40, 42–46; Doc. 175-1 at 8.) Notably,
11   however, Plaintiff no longer owns the 1680 Property. (SAC ¶ 33; Doc. 175-1 at 8.)

12   **B.     Procedural History**

13          Plaintiff initially filed this case on February 6, 2020—over four years ago. (Doc. 1.)
14   Plaintiff then amended its complaint on February 3, 2023 (Doc. 83) and on May 1, 2023
15   (Doc. 114). Plaintiff's SAC asserts three causes of action under the federal CERCLA, one
16   cause of action under California's Hazardous Substances Account Act ("HSAA"), and nine
17   additional tort and equitable causes of action under California state common law. (SAC
18   ¶¶ 47–122.) Each cause of action is premised on the alleged contamination of Plaintiff's
19   1680 Property with PCE. (*Id.*)

20          On April 27, 2023, the Kim Defendants answered Plaintiff's SAC, denying all
21   liability. (Doc. 155 at 1–17; Doc. 175-1 at 8.) The Kim Defendants also filed their Second
22   Amended Third-Party Claims against Defendant M&E, the Barawids, the Hortman
23   Defendants, and other former owners and operators of the dry-cleaning businesses
24   previously located at the 1718 Property. (Doc. 155 at 17–27; Doc. 175-1 at 8.) The Kim
25   Defendants allege that the sole source of the PCE contamination is the 1718 Property, not
26   their 1654 Property. (Doc. 155 at 18–19; Doc. 175-1 at 8.) Therefore, the Kim Defendants
27   assert that they are entitled to contribution and/or indemnity under CERCLA, HSAA, and
28   California Civil Code section 1432 from Defendant M&E, the Barawids, the Hortman

4

Defendants, and/or other former owners and operators of the dry-cleaning businesses previously located at the 1718 Property. (Doc. 155 at 20–25; Doc. 175-1 at 8.) The Kim Defendants also contend that Defendant M&E, the Barawids, the Hortman Defendants, and the other prior owners and operators of the 1718 Property are the sole source of the contamination on the Kim Defendants' 1654 Property and are liable for those response costs as well. (Doc. 157 at 28–30; Doc. 175-1 at 8.) On May 18, 2023, Defendant M&E and the Barawids answered the Kim's Second Amended Third-Party Claims, denying all liability. (Doc. 128; Doc. 175-1 at 9.)

On May 19, 2023, the Hortman Defendants answered Plaintiff's SAC, denying all liability. (Doc. 129; Doc. 175-1 at 9.) Additionally, the Hortman Defendants filed crossclaims for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432 against all other defendants named in Plaintiff's SAC, including the Kim Defendants and Defendant M&E, for any potential liability to Plaintiff. (Doc. 129 at 32; Doc. 175-1 at 9.) The Hortman Defendants also filed a Third-Party Complaint against prior owners and operators of the 1718 Property dating back to the 1960s for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432. (Doc. 129 at 48–63; Doc. 175-1 at 9.)

On November 30, 2022, Defendant M&E filed a separate complaint against the Hortman Defendants (Case No. 22-cv-01892-RBM-DEB, Doc. 1), which it then amended on March 22, 2023 (Case No. 22-cv-01892-RBM-DEB, Doc. 13). (Doc. 175-1 at 9.) In this First Amended Complaint against the Hortman Defendants, Defendant M&E contends that it is entitled to the recovery of response costs and contribution for the investigation and cleanup of its 1718 Property (22-cv-01892-RBM-DEB, Doc. 13 at 12–15, 23), as well as damages for negligence, nuisance, trespass, and waste (*id.* at 16–24). (Doc. 175-1 at 9.)

**C.    The Tentative Settlement Agreement**

Plaintiff and the Hortman Defendants reached a tentative settlement agreement on August 5, 2023. (Doc. 175-1 at 9; Doc. 175-2, Declaration of Matthew McMillan ("McMillan Decl.") ¶ 4, Ex. A [Doc. 175-3] ("Settlement Agreement").) The Settlement

Agreement includes the following material terms:

- The Hortman Defendants shall deliver to Plaintiff the sum of $10,000 by check(s) made payable to Plaintiff's counsel within 10 calendar days of this Order. (Settlement Agreement at 2; Doc. 175-1 at 9.)

- "[T]he Hortman Parties intend to file a Motion for Good Faith Settlement and dismissal of claims pursuant to federal law and California Code of Civil Procedure ("CCP") Section 877, *et seq.*, and that Pacific agrees to join in the request. … [T]he Motion for Good Faith Settlement will include a request that the Court issue an order that: (1) the settlement reached by the Parties is in good faith, fair, reasonable, and consistent with the intent of CERCLA, 42 U.S.C. § 9601, *et seq.* and CCP §§ 877 and 877.6 and (2) all claims for contribution or indemnity arising from or relating to the Site and the subject matter of the Action are barred as against the Hortman Parties to the greatest extent permitted under the law." (Settlement Agreement at 2.)

- The Settlement Agreement is "contingent upon the express condition precedent that the Court issue an order approving the Motion for Good Faith Settlement …." (Settlement Agreement at 2; Doc. 175-1 at 9–10.)

**D.    The Hortman Defendants' Motion**

In their Motion, the Hortman Defendants argue that there is a presumption of good faith settlement because experienced counsel negotiated the settlement at arms-length after years of investigation, discovery, and litigation regarding the contamination at the 1680 Property. (Doc. 175-1 at 13.) The Hortman Defendants also argue that the settlement is within the "ballpark" of their potential exposure in this matter and, therefore, supports a finding of good faith. (*Id.*) Specifically, the Hortman Defendants contend that a rough approximation of Plaintiff's total recovery is $185,000, meaning they have agreed to pay approximately 5.4% of Plaintiff's potential recovery, which is appropriate given the Court's discretion to allocate costs. (*Id.* at 13–14.) The Hortman Defendants also suggest that the Trust's potential liability is limited because its involvement "was limited to

6

property ownership, and [it] neither owned nor operated any dry-cleaning business itself." (*Id.* at 14–15.)  The Hortman Defendants also assert that the settlement is within the range of reasonable outcomes because Plaintiff will have trouble proving that the chemicals of concern were released at the 1718 Property during the Trust's ownership.  (*Id.* at 15, 18.) Likewise, the Hortman Defendants assert that the Estate's potential liability is zero because Barbara Hortman never owned the 1718 Property individually.  (*Id.* at 15–16.)  The Hortman Defendants then identify numerous other potentially proportionately liable parties, including Defendant M&E, owners and operators of the 1718 Property pre-dating 1987, and the Kim Defendants.  (*Id.* at 16–18.)

The Hortman Defendants also assert that they should pay less in settlement than if they were to proceed to trial (*id.* at 18–19), that the settlement is fair and reasonable given the Hortman Defendants' financial condition (*id.* at 19), and that there is no evidence of fraud or collusion (*id.*).  The Hortman Defendants conclude that "the Court should confirm that the [they] are discharged from all liability for contribution or indemnity arising from any alleged past negligence, act, omission, or misconduct … in connection with the 1680 Property which is the subject of Plaintiff's action."  (*Id.*)

## II.   LEGAL STANDARD

### A.   Supplement Jurisdiction and Choice of Law

This Court has subject matter jurisdiction over Plaintiff's CERCLA claims pursuant to 28 U.S.C. § 1331 because the causes of action alleged herein arise under the Constitution, laws, or treaties of the United States, or are supplemental thereto.  *State of Cal. on Behalf of Cal. Dep't of Health Servs. v. B & R Davis Fertilizers, Inc.*, 29 F.3d 634 (9th Cir. 1994).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Plaintiff's federal CERCLA claims.  (*Id.*)

"When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir.

7

2011). The Ninth Circuit has held that California Code of Civil Procedure section 877 constitutes substantive law and, therefore, that federal courts look to California law to decide whether a settlement was made in good faith with respect to state law tort claims. *Id.* (citing *Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir.1990)). Although California Code of Civil Procedure section 877.6 is the procedural mechanism for section 877, "the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law." *Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477–78 (C.D. Cal. 1997).

## B.    California Code of Civil Procedure Sections 877 and 877.6

Plaintiff and the Hortman Defendants seek a determination that the Settlement Agreement was made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6. (Doc. 175-1 at 6.) These provisions apply to Plaintiff's state law claims. *See Mason & Dixon Intermodal, Inc.*, 632 F.3d at 1060; *Slaven*, 958 F. Supp. at 1477–78.

California Code of Civil Procedure section 877 governs the effect of a release of claims given "in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights." Cal. Civ. Proc. Code § 877. The good faith settlement "shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release…." Cal. Civ. Proc. Code § 877(a). Further, "[i]t shall discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Civ. Proc. Code § 877(b).

"[A] settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. The application shall indicate the settling parties, and the basis, terms, and amount of the settlement." Cal. Civ. Proc. Code § 877.6(a). "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative

contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c).

In other words, "[s]ection 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant, but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by the amount of consideration paid for the settlement. Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the non-settling defendants obtain in return a reduction in their ultimate liability to the plaintiff." *Abbott Ford, Inc. v. Superior Ct.*, 43 Cal. 3d 858, 871–73 (1987) (citations and quotations omitted). "[T]he provisions of sections 877 and 877.6—governing the effect that a settlement agreement has on a settling defendant's potential liability to other defendants for contribution or comparative indemnity—have two major goals: the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Id.* at 871–72.

"The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response…." Cal. Civ. Proc. Code § 877.6(b). To determine whether a settlement has been made in good faith, and therefore bars all future claims by any tortfeasor for contribution or indemnity, California courts consider the factors identified by the California Supreme Court in *Tech-Bilt, Inc.*:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including [1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499–500 (1985). "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Id.*

"The party asserting the lack of good faith shall have the burden of proof on that issue." Cal. Civ. Proc. Code § 877.6(d). The non-settling party is "permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500 (citations omitted). "If contested, declarations by the non-settlor should be filed which in many cases could require the moving party to file responsive counter declarations to negate the lack of good faith asserted by the non-settling contesting party." *City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1261–62 (Ct. App. 1987) (emphasis added). "'[W]hen no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient.'" *Michell v. United States*, No. 09cv0387 BTM(JMA), 2011 WL 3903220, at *2 (S.D. Cal. Sept. 6, 2011) (quoting *City of Grand Terrace*, 192 Cal. App. 3d at 1261); *see also Hernandez v. Sutter Med. Ctr. of Santa Rosa*, 2009 WL 322937, at *3 (N.D. Cal. Feb. 9, 2009) ("Where … all the parties have received timely and sufficient notice, and have not filed any oppositions to a proposed settlement, a court need not perform a *Tech-Bilt* analysis."); *Bonds v. Nicoletti Oil, Inc.*, 2008 WL 4104272, at *5 (E.D. Cal. Sept. 3, 2008) ("Because no opposition to the motion has been filed … the *Tech-Bilt* factors are not considered or weighed.").

Should a court grant an application for a good faith settlement determination under California Code of Civil Procedure sections 877 and 877.6, "only those non-parties with *constitutionally sufficient prior notice* will be bound by a 'good faith settlement' determination[.]" *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010) (emphasis added); *see also Singer Co. v. Superior Ct.*, 179 Cal. App. 3d 875, 890–91 (1986); *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006) ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges

10

indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given *notice and an opportunity to be heard*.") (emphasis added).  In other words, the scope of the contribution/indemnity bar is not unlimited.  *Hartford Accident & Indem. Co. v. Superior Ct.*, 29 Cal. App. 4th 435, 441 (1994) ("[T]he focus of the statutory scheme is on settlements by a plaintiff with one of several parties alleged to be jointly liable for the same tortious injury."); *see also Arizona Pipeline Co. v. Superior Ct.*, 22 Cal. App. 4th 33, 42 (1994); *West v. Superior Ct.*, 27 Cal. App. 4th 1625, 1636–37 (1994); *C. L. Peck Contractors v. Superior Ct.*, 159 Cal. App. 3d 828, 831 (1984).

Determinations of good faith made under California Code of Civil Procedure sections 877 and 877.6 apply to claims asserted under the HSAA in addition to California state common law tort claims.  *Fullerton Redevelopment Agency v. S. Cal. Gas Co.*, 183 Cal. App. 4th 428, 432 (2010).

## C.    CERCLA

Plaintiff and the Hortman Defendants also seek approval of its settlement agreement and an order providing it with contribution protection under CERCLA.  42 U.S.C. § 9613(f).  In considering this request, the Court first reviews CERCLA's statutory framework.

Congress enacted CERCLA "in response to the serious environmental and health risks posed by industrial pollution."  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009).  CERCLA "imposes *strict liability* on four categories of potentially responsible parties (PRPs) for the cleanup costs of an environmental hazard, *even if the person did not contribute to the contamination*."  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (emphasis added); *see also United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 874 (9th Cir. 2014) (CERCLA "imposes strict liability on certain classes of parties who are potentially responsible for a site's contamination.") (internal quotation omitted).  "CERCLA liability is joint and several, meaning that a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination.  The party saddled with the cleanup

11

costs may, in turn, sue other potentially responsible parties for contribution." *Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912 (9th Cir. 2010); *see also AmeriPride Servs. Inc. v. Tex. E. Overseas Inc.*, 782 F.3d 474, 480 (9th Cir. 2015); 42 U.S.C. § 9607(a); 42 U.S.C. 9613(f)(1).

> There are four categories of potentially responsible parties ("PRPs"):
>
> …(1) the owner and operator of a vessel or a facility,[3] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment … of hazardous substances … , and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities … from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…

42 U.S.C. § 9607. PRPs are responsible for "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe ...; (B) any other necessary costs of response incurred by any other person …; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study …." 42 U.S.C. § 9607(a)(4)(A)–(D).

CERCLA's otherwise harsh, strict-liability scheme encourages settlement by providing so-called "contribution protection" to "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement[.]" 42 U.S.C. § 9613(f)(2). In other words, CERCLA prevents parties settling with the United States or a State from later being sued for contribution by non-settling parties. *See id.* "Such settlement does not discharge any of the other potentially liable persons unless its

---

[3] "The term 'facility' means … any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located …." 42 U.S.C. 9601(9).

12

terms so provide, but it reduces the potential liability of the others by the amount of the settlement." *Id.*

CERCLA is silent as to whether contribution protection and the reduction of the remaining liability from the non-settling parties applies to settlement agreements between private parties. For this reason, the Ninth Circuit looks to another CERCLA provision for the authority to allocate costs and afford contribution protection in settlements between private parties: "In resolving contribution claims, the court may allocate response costs among liable parties *using such equitable factors as the court determines are appropriate*." 42 U.S.C. § 9613(f)(1) (emphasis added). In *AmeriPride Services, Inc.*, the Ninth Circuit held that "a district court has discretion under [this provision] to determine the most equitable method of accounting for settlements between private parties in a contribution action." 782 F.3d at 487; *see also Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, Case No.: CV 19-03007-AB (FFMx), 2020 WL 2504331, at *3 (C.D. Cal. May 13, 2020) ("To facilitate early and complete settlement of *private* cost-recovery actions …, federal courts may approve settlements and enter bar orders that discharge all claims of contribution by non-settling defendants against settling defendants.") (emphasis added). However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA. *AmeriPride*, 782 F.3d at 488. "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

Courts generally review settlements and enter contribution and indemnity bar orders in CERCLA cases if the settlement is "fair, reasonable, and adequate." *Cooper Drum Cooperating Parties Grp.*, 2020 WL 2504331, at *3 (quoting *Coppola v. Smith*, CASE NO. 1:11-CV-1257 AWI BAM, 2016 WL 3407571, at *2 (E.D. Cal. June 20, 2016)); *see also Rev 973, LLC v. Mouren-Laurens*, Case No. CV 98-10690 DSF (Ex), 2016 WL 9185139, at *1 (C.D. Cal. July 1, 2016) ("In considering a settlement under CERCLA, a district court is to consider whether the proposed settlement is fair, reasonable, and consistent with the purposes that CERCLA is intended to serve."). "A presumption of fairness in settlement

arises where: '(1) counsel is experienced in similar litigation; (2) settlement was reached through arm's-length negotiations; and (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently.'" *Id.* at *4 (quoting *City of San Diego v. Nat'l Steel & Shipbuilding Co.*, No. 09cv2275 WQH (JLB), 2014 WL 3489282, at *12 (S.D Cal. July 10, 2014)).

Further, when considering the equitable allocation of costs, courts weigh the so-called "Gore Factors." They are "(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment." *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146 n.1 (9th Cir. 2018) (internal quotation omitted).

While districts courts are free to grant settling parties contribution protection, the scope of permissible contribution protection is limited. "CERCLA's policy of encouraging settlements by authorizing contribution protection to settling parties should not be construed in a manner that ambushes persons … who had no connection with, and no responsibility for, the pollution on the site at issue in the settlement …." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1264 (9th Cir. 2010). "[T]he overwhelming majority of courts that have imposed or enforced a CERCLA contribution bar in a private-party settlement have done so only where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who otherwise had at least constructive notice that their contribution claims stood to be extinguished." *Id.* at 1265. Additionally, a contribution bar should not extend beyond

"matter expressly contemplated by the parties in entering into the [] [s]ettlement."  *Id.* at 1264.

## III.    DISCUSSION

**A.    California Code of Civil Procedure Sections 877 and 877.6**

**1.    The *Tech-Bilt, Inc.* Factors**

As stated above, "[t]he party asserting the lack of good faith shall have the burden of proof on that issue."  Cal. Civ. Proc. Code § 877.6(d).  Further, the Hortman Defendants' Motion is unopposed; therefore, the Court need not address the *Tech-Bilt, Inc.* factors.  *See Michell*, 2011 WL 3903220, at *2 (finding that a district court need not perform a Tech-Bilt when a good faith settlement motion is unopposed); *Hernandez*, 2009 WL 322937, at *3 (same); *Bonds*, 2008 WL 4104272, at *5 (same).  Nevertheless, a careful review of the Hortman Defendants' Motion and the operative pleadings reveals that the Settlement Agreement satisfies the test for a good faith settlement set forth in *Tech-Bilt, Inc.*

**a)    The Hortman Defendants' Proportionate Liability**

The first four *Tech-Bilt, Inc.* factors are the most important.  They are "[1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial."  *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

A rough approximation of Plaintiff's total recovery is $185,000 in response costs to retain experts to investigate the contamination and to work with the Regional Water Quality Control Board because Plaintiff no longer owns the 1680 Property and, therefore, will not continue to incur response costs.  (Doc. 138 at 2; SAC ¶ 33; Doc. 175-1 at 13–14.)  The Hortman Defendants have agreed to pay $10,000, or approximately 5.4% percent, of Plaintiff's total recovery.  (Settlement Agreement at 2.)  The Court is persuaded that this allocation is fair based on the evidence presented by the Hortman Defendants in support of their unopposed Motion.

Here, the Hortman Defendants are only two of numerous defendants and third-party defendants named in this consolidated action. Each of these potentially responsible parties dilutes the Hortman Defendants potential liability for the contamination. The Court is also persuaded by the Hortman Defendants' argument that Plaintiff would struggle to prove contamination was released during the tenure of the Trust's ownership of the 1718 Property given that, on March 22, 1991, only four years after the Hortman Defendants acquired the property, the County of San Diego issued a notice stating that "no further action is required" for the cleanup of the property. (Doc. 175-6.)

Accordingly, the Court finds that the agreed-to settlement figure is not "so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of [California Code of Civil Procedure section 877 and 877.6][,]" *Tech-Bilt, Inc.*, 38 Cal. 3d 488 at 499–500, especially considering the notion that a settling defendant should pay less than it would if found liable at trial. In other word, the Court finds that these four factors weigh in favor of granting the Hortman Defendants' Motion.

### b) The Hortman Defendants' Financial Condition

"Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

Here, the Hortman Defendants assert that they were not able to identify any insurance policy that would provide coverage for the claims alleged in this lawsuit. (Doc. 175-1 at 19; Doc. 175-2, McMillan Decl. ¶ 7.) The Hortman Defendants also assert that, prior to her death, Barbara Hortman was declared incapacitated, and the Trust was deemed irrevocable. (Doc. 175-1 at 19.) However, the Hortman Defendants do not explain how the irrevocability of the Trust affects the financial condition of the Hortman Defendants. Further, no party to this lawsuit suggests that the Settlement Agreement is the product of collusion, fraud, or tortious conduct.

Given there is no applicable insurance policy and no evidence of collusion, fraud, or tortious conduct, the Court finds that these two factors weigh in favor of granting the Hortman Defendants' Motion.

## 2. The Permissible Scope of the Requested Contribution/Indemnity Bar

In their Motion, the Hortman Defendants request a contribution/indemnity bar "for any other cause of action based upon comparative fault, indemnity or otherwise arising from any alleged past negligence, act, omission, or misconduct of the Hortmans *in connection with the [1680 Property] and the subject matter of this litigation.*" (Doc. 175 at 2–3 (emphasis added).)   However, the Settlement Agreement indicates that it is contingent upon an order from the Court barring "all claims for contribution or indemnity arising from or relating to the Site and the subject matter of the Action … against the Hortman Parties to the greatest extent permitted under the law." (Settlement Agreement at 2.)  "Site" is broadly defined as "the property known as the Valley Plaza Shopping Center in Escondido, California, including, without limitation, [the 1654 Property], [the 1680 Property], and [the 1718 Property], as well as the structures, soil, soil vapor, indoor air and groundwater thereon, and lands adjacent thereto." (*Id.* at 1.)  Given the contradictory language, the Court clarifies the permissible scope of the requested contribution/indemnity bar here.

### a) Future state common law and HSAA claims against the Hortman Defendants for indemnity or contribution for Plaintiff's investigation costs related to the 1680 Property are barred

The requested contribution or indemnity bar should apply to all claims against the Hortman Defendants for indemnity or contribution for money owed to Plaintiff for its past investigative costs related to the 1680 Property.   These costs were specifically contemplated by the proposed settlement agreement and clearly fall within the purview of California Code of Civil Procedure sections 877 and 877.6.  The bar also applies to any future claims by Plaintiff for any additional investigation or cleanup costs related to the 1680 Property because Plaintiff's lawsuit specifically contemplated the possibility of such

costs. Such claims are unlikely, however, because there is no evidence suggesting that the 1680 Property requires additional investigation or cleanup, and Plaintiff has since sold the 1680 Property.

> **b)** **State common law and HSAA claims against the Hortman Defendants by non-parties not given notice are not barred**

As stated above, "only those non-parties with constitutionally sufficient prior notice will be bound by a 'good faith settlement' determination[.]" *City of Emeryville*, 621 F.3d at 1266; *see also Gackstetter*, 135 Cal. App. 4th at 1273 ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard."). Here, the Hortman Defendants have not indicated that they provided notice of the settlement to any non-parties. Therefore, interpreting this notice requirement, the Court clarifies that this good faith settlement determination does not bar other adjacent landowners that are not a party to the present lawsuit from bringing claims against the Hortman Defendants related to investigation and/or cleanup of their properties. The Court also clarifies that current and future owners of the 1680 Property, who are not a party to the present lawsuit, are not barred from bringing state common law and HSAA claims against the Hortman Defendants related to any additional investigation and cleanup of the 1680 Property that may arise.

> **c)** **The Kim Defendants' state common law claims related to the investigation and cleanup of their 1654 Property are not barred**

The Kim Defendants' state common law claims related to the investigation and cleanup of their 1654 Property are not barred. This result is consistent with the Ninth Circuit's ruling in *City of Emeryville*, which involved the cleanup of two separate sites. 621 F.3d at 1266. There, the Ninth Circuit panel determined that the parties had no belief or expectation that it was resolving "site B" liability when it executed the "site A" settlement. *Id.* Therefore, any claims related to site B were not barred by the district court's good faith settlement determination. *Id.* The same is true here. The proposed settlement

agreement only contemplates liability to Plaintiff for the investigation of the 1680 Property. Claims regarding the investigation and cleanup of other properties, including the 1654 Property or the 1718 Property, are not barred.

## B.    CERCLA

### 1.    The Equitable Allocation of Costs

As stated above, the Ninth Circuit has held that "a district court has discretion under § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties in a contribution action." *AmeriPride Servs. Inc.*, 782 F.3d 474 at 487. However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA. *Id.* at 488. "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

District courts weigh the "Gore Factors" when considering the equitable allocation of costs. The "Gore Factors" applicable to the present case are the ability of the parties to demonstrate that their contribution to discharge, release, or disposal of hazardous waste can be distinguished; the parties' contribution and involvement in the generation, treatment, storage, or disposal of the hazardous waste; the degree of care exercised by the parties with respect to the hazardous waste concerned; and the degree of cooperation by the parties with federal, state, or local officials to prevent any harm to the public health of the environment. *TDY Holdings, LLC*, 885 F.3d 1142 at 1146, n. 1.

As stated above, the Hortman Defendants have agreed to pay $10,000, approximately 5.4% percent, of Plaintiff's total recovery. (*See* Section III.A.1.a.) The Court determines that the proposed settlement agreement is an equitable allocation of costs based on the information available to the court at this time. Applying the Gore Factors, the Hortman Defendants have shown that their contribution to the generation, treatment, storage, discharge, release, and disposal of the hazardous waste is likely limited because the Hortman Defendants did not own or operate the dry-cleaning businesses located on their property, and that, as of March 1991, the Hazardous Materials Management Division

19

indicated that no further action was required to clean up their property. The notice from the Hazardous Materials Management Division also demonstrates that the Hortman Defendants or their tenants worked with officials to address the alleged contamination. It is therefore within the Court's discretion to approve the Hortman Defendants' $10,000 settlement as an equitable allocation of costs. *See* 42 U.S.C. § 9613(f)(1); *AmeriPride Services, Inc.*, 782 F.3d at 487. Thus, the Court finds that the contemplated settlement is fair and reasonable under CERCLA.

### 2. The Scope of Contribution Protection Under CERCLA

As stated above, given the potential for ambiguity, the Court clarifies the permissible scope of the requested contribution/indemnity bar under CERCLA here.

#### a) Claims against the Hortman Defendants for indemnity or contribution for Plaintiff's costs related to the 1680 Property are barred

The requested bar applies to all claims against the Hortman Defendants for indemnity or contribution for money owed to Plaintiff under CERCLA for its investigative costs related to the 1680 Property. Plaintiff is also barred from filing additional claims against the Hortman Defendants stemming from the alleged contamination of the 1680 Property should Plaintiff incur additional response costs.

#### b) Claims by non-parties not provided notice of this Settlement Agreement are not barred

The Ninth Circuit has made clear that a CERCLA contribution bar does apply to parties unaware of the prior settlement negotiations or within constructive notice of the CERCLA contribution bar. *See City of Emeryville*, 621 F.3d at 1265. Therefore, the Court clarifies that the proposed settlement does not bar other adjacent landowners that are not a party to the present lawsuit from bringing CERCLA claims against the Hortman Defendants related to investigation or cleanup of their separate properties. The Court also clarifies that current and future owners of the 1680 Property, who are not a party to the present lawsuit, are not barred from bringing CERCLA claims against the Hortman

20

Defendants for any additional investigation and cleanup costs associated with the 1680 Property.

> c)      **The Kim Defendants' claims related to the investigation and cleanup of their 1654 Property are not barred**

The Ninth Circuit has also made clear that a contribution bar should not extend beyond "matter[s] expressly contemplated by the parties in entering into the [] [s]ettlement." *City of Emeryville*, 621 F.3d at 1264.  Here, the proposed settlement agreement between the Plaintiff and the Hortman Defendants only contemplates liability for Plaintiff's investigation costs related to the 1680 Property.  For this reason, the Court clarifies that nothing bars the Kim Defendants from pursuing CERCLA claims related to the investigation and cleanup of their own 1654 Property.

## IV.      <u>CONCLUSION</u>

Based on the foregoing, the Court **<u>GRANTS</u>** the Hortman Defendants' Motion but clarifies the permissible scope of the requested contribution or indemnity bar as detailed above.

**IT IS SO ORDERED.**

DATE:  April 15, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:20-cv-00234-RBM-DEB