1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company, et al., | Case No.:  3:20-cv-00234-RBM-DEB |
| Plaintiffs, | **ORDER DENYING ANGELA HONG'S MOTION TO DISMISS THE HORTMAN PARTIES' THIRD-PARTY COMPLAINT** |
| v. | |
| SUZY CLEANERS, an organization, et al., | **[Doc. 223]** |
| Defendants. | |

Pending before the Court is Third-Party Defendant Angela Hong's ("Ms. Hong") Motion to Dismiss the Hortman Parties' Third-Party Complaint ("Motion to Dismiss"), which was filed on August 12, 2024.  (Doc. 223.)  On August 30, 2024, Third-Party Plaintiffs Kim Buhler, administrator and executor of the Estate of Barbara Hortman, and Kim Buhler and Norman Alton Hortman, III, Trustees of the Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1 Dated July 2, 1985 (the "Hortman Parties") filed an Opposition to Ms. Hong's Motion to Dismiss ("Opposition").  (Doc. 229.)   On September 9, 2024, Ms. Hong filed a Reply in Support of her Motion to Dismiss ("Reply").  (Doc. 235.)

1

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, Ms. Hong's Motion to Dismiss is **<u>DENIED</u>**.

<h1 style="text-align:center">I.    <u>BACKGROUND</u></h1>

**A.    Factual Background**

**1.    Plaintiff and the 1680 Property**

Plaintiff Pacific Resources Associates LLC ("Pacific Resources") owned the property located at 1680 East Valley Parkway, Escondido, California 92027, a storefront in the Valley Plaza shopping center, from February 12, 2001 until November 2022 (the "1680 Property").  (Doc. 114 at 9.)

**2.    M&E, the Barawids, the Hortman Parties, and the 1718 Property**

M&E Brothers, LLC ("M&E") owns the property located at 1718 East Valley Parkway, Escondido, California 92027, another storefront in the Valley Plaza shopping center (the "1718 Property").  (Case No. 3:22-cv-01892-RBM-DEB, Doc. 13 at 2.)  The 1718 Property is located east of Plaintiff's 1680 Property.  (Doc. 223 at 9.)  M&E acquired the 1718 Property from Michael L. Barawid, Edward L. Barawid, and Flor De Lys L. Barawid (the "Barawids") on December 29, 2004.  (Case No. 3:22-cv-01892-RBM-DEB, Doc. 13 at 2.)  The Hortman Parties held title to the 1718 Property between September 3, 1987 and August 17, 1999.  (*Id.*)

**3.    The Kims and the 1654 Property**

Guhn Y. Kim and Yun Soon Kim, individually and as husband and wife, and Guhn Y. Kim and Yun Soon Kim, as trustees of The Kim Family Trust of 2017 (collectively, "the Kims") own the property located at 1654 East Valley Parkway, Escondido, California 92027, a third storefront in the Valley Plaza shopping center (the "1654 Property").  (Case No. 3:22-cv-01892-RBM-DEB, Doc. 34 at 46–47.)  The 1654 Property is located west of Plaintiff's 1680 Property.  (Doc. 223 at 9.)  The 1654 Property is currently home to Suzy Cleaners.  (Case No. 3:22-cv-01892-RBM-DEB, Doc. 34 at 46–47.)

**B.    Procedural History**

    **1.    The 2020 Pacific Resources Action**

      Pacific Resources initially filed this case on February 6, 2020—over four years ago. (Doc. 1.)  Pacific Resources then amended its Complaint on February 3, 2023 (Doc. 83) and on May 1, 2023 (Doc. 114).  Pacific Resources alleged that the former and current owners and operators of the drycleaning businesses located at the 1654 Property and the 1718 Property released perchloroethylene ("PCE") into the soil beneath the properties, which then migrated and contaminated the soil beneath Pacific Resource's 1680 Property. (*Id.* at 9–11.)  Pacific Resources alleged that it incurred substantial response, removal, and remediation costs.  (*Id.* at 10–13.)  Pacific Resources asserted three causes of action under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), one cause of action under California's Hazardous Substances Account Act ("HSAA"), and nine additional tort and equitable causes of action under California state common law.  (*Id.* at 13–26.)  Pacific Resources has since settled all of its claims.  (*See* Doc. 168, 169, 195.)

      On April 27, 2023, the Kims, the owners of the 1654 Property, answered Pacific Resource's Second Amended Complaint, denying all liability.  (Doc. 115.)  The Kims also filed third-party claims against M&E, the Barawids, the Hortman Parties, and other former owners and operators of the drycleaning businesses previously located at the 1718 Property for (1) contribution under CERCLA, (2) equitable indemnity, (3) indemnity/contribution under the HSAA, (4) federal declaratory relief, (5) state law contribution, (6) trespass, and (7) private nuisance.  (Doc. 115 at 17–27.)

      Likewise, on May 19, 2023, the Hortman Parties answered Pacific Resources' Second Amended Complaint, denying all liability.  (Doc. 129.)  Additionally, the Hortman Parties filed crossclaims for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432 against the Kims and M&E, among others.  (Doc. 129 at 32.)  The Hortman Parties also filed a Third-Party Complaint against prior owners and operators of the 1718 Property dating back to the 1960s for contribution and/or indemnity

under CERCLA, HSAA, and California Civil Code section 1432.  (Doc. 129 at 48–63.)

### 2.    The 2022 M&E Action

On November 30, 2022, Defendant M&E filed a separate action against the Hortman Parties (Case No. 22-cv-01892-RBM-DEB, Doc. 1), which it then amended on March 22, 2023 (Case No. 22-cv-01892-RBM-DEB, Doc. 13).  M&E contends that it is entitled to the recovery of response costs and contribution for the investigation and cleanup of its 1718 Property (*id.* at 12–15, 23), as well as damages for negligence, nuisance, trespass, and waste (*id.* at 16–24).

## C.    The Hortman Parties' Third-Party Complaint

On June 13, 2024, in response to M&E's separate action against them, the Hortman Parties' filed a Third-Party Complaint against Ms. Hong, among many others.  (*See* Case No. 3:22-cv-01892-RBM-DEB ["Hortman Parties' Third-Party Complaint"], Doc. 34 at 44–73.)  The Hortman Parties' Third-Party Complaint is the subject of Ms. Hong's Motion to Dismiss and this Order.

In their Third-Party Complaint, the Hortman Parties allege that Ms. Hong has owned and operated the drycleaning business located on the 1654 Property since approximately December 25, 2001.  (Hortman Parties' Third-Party Complaint ¶ 14.)  Ms. Hong is referred to as an "Operator" Third-Party Defendant throughout the Hortman Parties' Third-Party Complaint.  (*Id.*)

### 1.    Group Allegations

The Hortman Parties allege that "the Operator Third-Party Defendants leased, owned and/or operated dry cleaning facilities on the 1654 Property or 1718 Property[.]" (*Id.* ¶ 55.)  The Hortman Parties allege that the Site, which includes the 1654 Property, the 1680 Property, the 1718 Property, and adjacent properties, "has been impacted by the presence of Hazardous Substances including, but not limited to, volatile organic compounds ('VOCs') such as tetrachloroethylene, or PCE."  (*Id.* ¶ 56.)  The Hortman Parties allege "that VOCs, including PCE, were detected above laboratory reporting limits in the soil vapor approximately 5-feet below ground surface (bgs) beneath the 1654

4

Property, the 1680 Property, and the 1718 Property in 2022." (*Id.*)  The Hortman Parties allege "that PCE was detected above the laboratory reporting limit in the groundwater approximately 15-feet bgs beneath the 1718 Property in 2022." (*Id.*)

The Hortman Parties allege that "Third-Party Defendants' handling, generation, usage, storage, disposal or Release of Hazardous Substances and Hazardous Waste at the 1654 and 1718 Properties or adjacent sites has caused contamination and pollution of structures, soil, subsoils, surface water and groundwater at and in the vicinity of the Site and has resulted in further release, spread and co-mingling of contamination." (*Id.* ¶ 57.)

The Hortman Parties allege that "Third-Party Defendants exercised oversight of the management and control of Hazardous Substance and Hazardous Waste activities conducted thereon, or arranged for the Disposal of Hazardous Substances at the 1654 and 1718 Properties, are parties who are liable or potentially liable for any necessary costs of response incurred for the investigation and remediation of any and all Disposals and/or Releases of Hazardous Substances at the Site." (*Id.* ¶ 59.)

The Hortman Parties allege that "each Third-Party Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, Release, or Disposal of Hazardous Substances, Hazardous Waste, and/or solid waste in the Environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Third-Party Defendant Released or otherwise discarded Hazardous Substances, Hazardous Waste, and/or solid waste, or controlled and/or operated the Site and business from which Hazardous Substances, Hazardous Waste, and/or solid waste were Released or otherwise discarded, and failed to prevent or abate the Hazardous Substances, Hazardous Waste, and/or solid waste contamination." (*Id.* ¶ 60.)

The Hortman Parties allege that "Third-Party Defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Hazardous Substances, Hazardous Waste, and/or solid waste in the Environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at

the Site by their respective operations of the dry cleaning machine(s), lack of maintenance and/or improper Disposal of PCE waste, amongst other operational practices. Once released into the Environment, these Hazardous Substances, Hazardous Waste, and/or solid wastes have continued to spread and migrate within the Environment at the Site, but Third-Party Defendants failed to abate this contamination." *(Id.* ¶ 62.)

### 2. Specific Allegations

The Hortman Parties allege that Ms. Hong used PCE for drycleaning at the 1654 Property until 2013. (*Id.* ¶ 62.) Plaintiffs allege that Ms. Hong was "required to conduct weekly vapor and leak checks and record the date performed and related components repaired on a San Diego County Air Pollution Control District ['APCD'] approved checklist as a condition of their respective permits during their PCE drycleaning operations on the 1654 Property." (*Id.*)

The Hortman Parties allege that Ms. Hong "received notices of violation for PCE *vapor leaks* on the 1654 Property from the San Diego County Air Pollution Control District during her operation of Suzy Cleaners in 2003 and 2004" and that her "drycleaning machine *was leaking* on the 1654 Property in September 2005." (*Id.* ¶ 68 (emphasis added).) The Hortman Parties allege that Ms. Hong "was responsible for the disposal of spent dry cleaning fluids containing PCE during her operation of Suzy Cleaners." (*Id.* ¶ 69.)

### 3. Causes of Action

The Hortman Parties assert four causes of action against Ms. Hong: (1) Contribution Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f); (2) Declaratory Relief Under Federal Law; (3) Indemnity/Contribution Under the HSAA, Health & Safety Code § 25363(a); and (4) Cost Recovery Pursuant to CERCLA § 107, 42 U.S.C. § 9607.

### D. Ms. Hong's Motion to Dismiss

In her Motion to Dismiss, Ms. Hong argues that "the only relevant question on this Motion [to Dismiss] is whether the [Third-Party] Complaint adequately alleges that Ms. Hong is liable as a 'covered person' under [CERCLA]" because the Hortman Parties'

claims under HSAA and for federal declaratory relief are both contingent upon their CERCLA claims.  (Doc. 223 at 13–14.)

Ms. Hong asserts that "covered persons" include: "1) an owner or operator of a facility; 2) any person who at the time of disposal of hazardous substance owned or operated a facility at which such hazardous substances were disposed of [i.e., a past owner or operator]; 3) any person who by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances at a facility; and 4) any person who accepted hazardous substances for transport to disposal at a facility or site from which there is a release." (*Id.* at 14 (citing 42 U.S.C. § 9607(a)(1)–(4)).

Ms. Hong then argues that the Hortman Parties' Third-Party Complaint does not adequately allege (1) that Ms. Hong is a current owner or operator (*id.* at 15–16), (2) that the disposal of hazardous substances occurred at the facility during her operation (*id.* at 16–20), or (3) that she arranged for disposal of hazardous substances at a facility (*id.* at 20–21).  In making her second argument regarding the disposal of hazardous substances that occurred at the facility during her operation, Ms. Hong asserts that the Court may consider the APCD checklists in ruling on her Motion to Dismiss because they are referenced in the Hortman Parties' Third-Party Complaint, they are central to the Hortman Parties' claims, and their authenticity is not questioned.  (Doc. 223 at 19–20.)  Interpreting the information from the 2005 checklist, Ms. Hong argues that each of the reported "leaks," even the leak in 2005, was merely a "vapor leak," which does not constitute a "disposal" under CERCLA.  (*Id.* at 16–19.)

The Hortman Parties respond that they have sufficiently alleged that Ms. Hong was both a current and past operator of the drycleaning business at the 1654 Property.  (Doc. 229 at 7, 9–12.)

## II.    <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

7

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.   DISCUSSION

"In order to prevail in a private action under CERCLA for response costs or natural resource damages, a plaintiff must prove the following elements, among others: (1) the site on which the hazardous substances are found is a 'facility' within the meaning of CERCLA, 42 U.S.C. § 9601(9); (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, 42 U.S.C. § 9607(a)(4); and (3) the defendant is within one of the four broad classes of 'potentially responsible parties' ('PRPs') listed in

8

42 U.S.C. § 9607(a)(1)–(4)." *Pakootas v. Teck Cominco Metals, LTD.*, 830 F.3d 975, 981 (9th Cir. 2016) (citing *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1358 (9th Cir.1990)).  Ms. Hong's Motion to Dismiss concerns the third element—that she falls within one of the four broad classes of PRPs.

"The four PRP classes are: '(1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person ....'" *Id.* at 982 (quoting 42 U.S.C. § 9607(a)).

The first PRP class—"the owner and operator of a vessel or a facility"—refers to current owners or operators.  *California Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912–13 (9th Cir. 2010) (citations omitted).  In contrast, the second PRP class—"any person who at the time of disposal of any hazardous substance ... operated any facility at which such hazardous substances were disposed of"—refers to prior owners and operators of the facility.  *United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 756 (9th Cir. 2020) (citation omitted).  "To sharpen the definition [of 'operator'] for [the] purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."  *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998).

Here, the Hortman Parties allege that Ms. Hong has owned and operated the drycleaning business located at the 1654 Property since approximately December 25, 2001.

(Hortman Parties' Third-Party Complaint ¶ 14.)  The Hortman Parties also allege that Ms. Hong used PCE on the 1654 Property until 2013, before which she received notices of violation for PCE "vapor leaks" in 2003 and 2004, and a PCE "leak" in 2005.  (*Id.* ¶¶ 62, 68.)  Ms. Hong asserts that the Hortman Parties' use of the word "operate" in their Third-Party Complaint is not sufficient to adequately allege that Ms. Hong is a member of the first PRP class—"the owner and operator of a vessel or a facility."  In support of this argument, Ms. Hong cites only to the general proposition that the Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  (Doc. 223 at 15, n.4 (citing *Iqbal*, 556 U.S. at 663).)  The Court is not persuaded.  While the terms "operate," "operates," and "operator" are used and defined in the statute, they also have a factual meaning easily understood by the Court.  Therefore, the Court finds that the Hortman Parties' allegation that Ms. Hong has owned and operated the drycleaning business located at the 1654 Property since approximately December 25, 2001 is a factual allegation that is neither conclusory nor a mere recitation of CERCLA's elements.

Accordingly, the Court finds that the Hortman Parties' allegation that Ms. Hong has owned and operated the drycleaning business since 2001, coupled with specific allegations regarding her use of PCE, are sufficient to establish that Ms. Hong was an owner or operator of the drycleaning facility at this stage.  Because Ms. Hong need only be "within *one* of the four broad classes of [PRPs] listed in 42 U.S.C. § 9607(a)(1)–(4)," *Pakootas*, 830 F.3d at 981 (emphasis added), the Court need not address Ms. Hong's remaining arguments regarding her status as a "person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," i.e., a past owner or operator.  42 U.S.C. § 9607(a)(2).[1]

---

[1] Even if the Court were to consider the APCD checklists for the truth of the matters asserted therein, which it does not (*see* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366, at 159 (3d ed. 2004) ("[F]ederal courts have complete discretion to determine whether or

10

# IV.    **CONCLUSION**

Based on the foregoing, Ms. Hong's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

DATE:  November 7, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

not to accept the submission of any material beyond the pleadings ….")), and conclude that each of the noticed leaks were mere "vapor leaks," which it does not have the expertise to do, the Court is not persuaded by Ms. Hong's argument that "vapor leaks" are not "disposals" under CERCLA.  Federal courts have long been involved in the apportionment of liability for PCE contamination caused by PCE vapor leaks.  *See e.g., Mission Linen Supply v. City of Visalia*, No. 1:15-CV-0672 AWI EPG, 2019 WL 446358, at *19–21 (E.D. Cal. Feb. 5, 2019), *aff'd*, 817 F. App'x 336 (9th Cir. 2020).

3:20-cv-00234-RBM-DEB