# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SUZY CLEANERS, an organization, et al.,<br><br>Defendants. | Case No.: 3:20-cv-00234-RBM-DEB<br><br>**ORDER GRANTING JEONG-SOON LONG'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>[Doc. 240] |

On September 19, 2024, Defendant and Cross-Defendant Jeong-Soon Long ("Ms. Long") filed a Motion for Determination of Good Faith Settlement [C.C.P. § 877(a)(1)] ("Settlement Motion"). (Doc. 240.) In her Settlement Motion, Ms. Long asserts that she has entered into a settlement with Defendants, Cross-Claimants, and Third-Party Plaintiff Kim Hortman Buhler, as administrator and executor of The Estate of Barbara Hortman, and Kim Hortman Buhler and Norman Alton Hortman, III, as trustees of The Norman Alton Hortman and Barabra Hortman Recoverable Trust No 1 Dated July 2, 1985 (collectively, the "Hortman Parties"). (*Id.* at 2.) Ms. Long requests an order finding that "the settlement was made in food faith within the meaning of California Code of Civil Procedure § 877.6 and that such settlement will bar all such existing or future claims

against [her] for indemnity and/or contribution, equitable, partial or total." (*Id.*) To date, no opposition has been filed.

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Ms. Long's Settlement Motion is **GRANTED**.

## I.     BACKGROUND[1]

**A.     The Parties and Properties**

### 1.     Pacific Resources and the 1680 Property

Plaintiff Pacific Resources Associates LLC ("Pacific Resources") owned a storefront property in the Valley Plaza shopping center located at 1680 East Valley Parkway, Escondido, California 92027 (the "1680 Property") from February 12, 2001 until November 2022. (Doc. 114, Second Amended Complaint ("SAC") ¶ 33.)

### 2.     M&E, the Barawids, the Hortman Parties, and the 1718 Property

M&E Brothers, LLC ("M&E") owns the property located at 1718 East Valley Parkway, Escondido, California 92027, another storefront in the Valley Plaza shopping center (the "1718 Property"). (*Id.* ¶ 18.) The 1718 Property is located east of the 1680 Property. (*Id.* ¶ 28; *see also* Doc. 168 at 3.)

The 1718 Property is not currently being used as a dry cleaner, but Ms. Long asserts the Hortman Parties owned and operated a dry-cleaning business at the 1718 Property in the 1990s. (Doc. 240 at 7.)

### 3.     The Kim Parties and the 1654 Property

Guhn Y. Kim, Yun Soon Kim, and The Kim Family Trust of 2017 (the "Kim Parties") own the property located at 1654 East Valley Parkway, Escondido, California 92027, a third storefront in the Valley Plaza shopping center (the "1654 Property"). (SAC ¶ 5.) The 1654 Property is located west of Pacific Resources' 1680 Property. (*Id.* ¶ 28;

---

[1] The facts and law summarized in this background section constitute the factual allegations and legal contentions of the parties and are not conclusions of fact and law by the Court.

*see also* Doc. 168 at 3.)  The 1654 Property is currently home to Suzy Cleaners.  (SAC ¶ 5.)

**B.    Procedural History**

Pacific Resources filed this action on February 6, 2020. (Doc. 1.)  Pacific Resources amended its complaint on February 3, 2023 (Doc. 83) and on May 1, 2023 (Doc. 114 [SAC]).  Pacific Resources' SAC asserted three causes of action under the federal Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), one cause of action under California's Hazardous Substances Account Act ("HSAA"), and nine additional tort and equitable causes of action under California state common law.  (*Id.* ¶¶ 47–122.)  Each cause of action was premised on the alleged contamination of Pacific Resources' 1680 Property with perchloroethylene ("PCE").  (*Id.*)  Pacific Resources alleged that all former and current owners and operators of the dry-cleaning businesses located or previously located at the 1654 Property and the 1718 Property released PCE into the soil beneath the properties, which then migrated and contaminated the soil beneath the 1680 Property.  (*Id.* ¶¶ 36, 39, 41.)  Pacific Resources alleged that it incurred substantial response, removal, and remediation costs.  (*Id.* ¶¶ 40, 42–46.)  Pacific Resources no longer owns the 1680 Property (*Id.* ¶ 33) and was dismissed from this action following the settlement of its claims (Doc. 200).  However, as set forth below, various claims remain.

On April 27, 2023, the Kim Parties answered Pacific Resources' SAC.  (Doc. 115 at 1–17.)  The Kim Parties filed Second Amended Third-Party Claims against M&E and its owners, the Hortman Parties, and other former owners and operators of the dry-cleaning businesses previously located at the 1718 Property for the alleged contamination of Pacific Resources' 1680 Property, as well as the contamination at their own 1654 Property.  (Doc. 115 at 17–27.)  The Kim Parties allege that they are entitled to contribution and/or indemnity because the sole source of the PCE contamination on the 1680 Property is the 1718 Property, not their 1654 Property.  (Doc. 115 at 18–19, 20–25.)

On May 19, 2023, the Hortman Parties answered Pacific Resources' SAC, denying all liability.  (Doc. 129.)  Additionally, the Hortman Parties filed crossclaims for

contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432 against all other named defendants in Pacific Resources' SAC, including the Kim Parties and M&E, for any potential liability to Pacific Resources. (*Id.* at 32.) The Hortman Parties also filed a Third-Party Complaint against prior owners and operators of the 1718 Property, dating back to the 1960s, for contribution and/or indemnity under CERCLA, HSAA, and California Civil Code section 1432. (*Id.* at 48–63.)

On November 30, 2022, M&E filed a separate complaint against the Hortman Parties (Case No. 22-cv-01892-RBM-DEB, Doc. 1), which it then amended on March 22, 2023 (Case No. 22-cv-01892-RBM-DEB, Doc. 13). In its First Amended Complaint against the Hortman Parties, M&E contends that it is entitled to the recovery of response costs and contribution for the investigation and cleanup of its 1718 Property, as well as damages for negligence, nuisance, trespass, and waste. (*Id.* at 5–8; 10–24.) On June 13, 2024, the Hortman Parties answered M&E's First Amended Complaint and filed a third-party complaint against Ms. Long, among others.[2] (*See* Case No. 22-cv-01892-RBM-DEB, Doc. 34 at 44.)

In their third-party complaint against Ms. Long, the Hortman Parties allege that Ms. Long owned and operated the dry-cleaning business at the 1654 Property from approximately 1999 to 2001. (*Id.* at 48.) The Hortman Parties allege that Ms. Long used PCE during her operation of the dry-cleaning business. (*Id.* at 62.) The Hortman Parties allege that Ms. Long received a notice of violation for PCE vapor leaks on the 1654 Property in 2001. (*Id.* at 63.) Therefore, the Hortman Parties seek contribution from Ms. Long pursuant to 42 U.S.C. § 9613(f); indemnity/contribution pursuant to California Health & Safety Code § 25363(a); and cost recovery pursuant to 42 U.S.C. § 9607. (*Id.* at 65–73.)

---

[2] The Hortman Parties' Third-Party Complaint is the subject of the Settlement Motion and this Order.

### C. The Tentative Settlement Agreement

The Hortman Parties and Ms. Long have negotiated a settlement of the Hortman Parties' third-party claims against Ms. Long. (*See* Doc. 240-1 at 5–13 [Settlement Agreement].) In the Settlement Agreement, "the Hortman Parties, on the one hand, and [Ms.] Long, on the other hand, desire and intend to effect a full and final settlement and resolution of all past, present and future, known and unknown, [c]laims … that each has, may have or will have against each other relating to the alleged contamination at the Site … ."[3] (*Id.* at 5.) Ms. Long "agrees to pay the Hortman Parties the total sum of seven thousand five-hundred dollars and zero cents ($7,500.00) … , provided that the Court approves [this Settlement Motion]." (*Id.* at 6.)

### D. Ms. Long's Settlement Motion

In the Settlement Motion at issue, Ms. Long argues that the settlement is a just, fair, adequate, and equitable resolution of all claims against her. (Doc. 240 at 15–19.) Specifically, Ms. Long asserts that California Regional Water Quality Board has never identified Ms. Long as a responsible party (*id.* at 16) and that she only operated the dry-cleaning business located at the 1654 Property for 31 months, more than 22 years ago (*id.* at 17). (*See also* Doc. 240-2, Declaration of Jeong Soon Long in Support of Motion for Determination of Good Faith Settlement ("Long Decl."), ¶¶ 1, 4–5.) Therefore, Ms. Long argues that, "[i]n the unlikely event that [she] would ever be found responsible for any of the contamination on the property anywhere, her share of the responsibility for clean-up would be *infinitesimal* compared to other defendants." (Doc. 240 at 17 (emphasis added).) Ms. Long also argues that the so-called "*Gore* factors" regarding the apportionment of liability weigh in favor of approving the settlement (*id.* at 17–18 (citing *TDY Holdings,*

---

[3] "'Site' means the property known as the Valley Plaza Shopping Center in Escondido, California, including the real property located at 1654 East Valley Parkway, 1680 East Valley Parkway, and 1718 East Valley Parkway, Escondido, California, 92027 and adjacent lands, including, without limitation, the structures, soil, subsoil, air, soil vapor, surface water and groundwater thereon." (*Id.* at 6.)

*LLC v. United States*, 885 F.3d 1142, 1147–48 (9th Cir. 2018))); that she should pay less in settlement than after trial (*id.* at 18); that her financial condition weights in favor of settlement (*id.* at 18–19); and that the settlement is not the result of collusion or fraud (*id.* at 19). To date, no opposition has been filed.

## II.     DISCUSSION

**A.     State Law Claims—California Code of Civil Procedure Sections 877 and 877.6**

Ms. Longs seeks a determination that the Settlement Agreement was made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6. (Doc. 240 at 2.)

"When a district court … hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). The Ninth Circuit has held that California Code of Civil Procedure section 877 constitutes substantive law and, therefore, that federal courts look to California law to decide whether a settlement was made in good faith with respect to state law claims. *Id.* (citing *Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir.1990)); *see also Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477–78 (C.D. Cal. 1997) (finding that, while California Code of Civil Procedure section 877.6 is the procedural mechanism for section 877, "the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law.").

California Code of Civil Procedure section 877 governs the effect of a release of claims given "in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights." Cal. Civ. Proc. Code § 877. The good faith settlement "shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release … ." Cal. Civ. Proc. Code § 877(a). Further, "[i]t shall discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Civ. Proc.

Code § 877(b). Determinations of good faith made under California Code of Civil Procedure sections 877 and 877.6 apply to claims asserted under the HSAA in addition to California state common law tort claims. *Fullerton Redevelopment Agency v. S. Cal. Gas Co.*, 183 Cal. App. 4th 428, 432 (2010).

"[A] settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. The application shall indicate the settling parties, and the basis, terms, and amount of the settlement." Cal. Civ. Proc. Code § 877.6(a). "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." *Id.* § 877.6(c). In other words, "[s]ection 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant, but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by the amount of consideration paid for the settlement. Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the non-settling defendants obtain in return a reduction in their ultimate liability to the plaintiff." *Abbott Ford, Inc. v. Superior Ct.*, 43 Cal. 3d 858, 872–73 (1987) (citations and quotations omitted). "[T]he provisions of sections 877 and 877.6—governing the effect that a settlement agreement has on a settling defendant's potential liability to other defendants for contribution or comparative indemnity—have two major goals: the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Id.* at 871–72.

"The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response … ." Cal. Civ. Proc. Code § 877.6(b). To determine whether a settlement has been made in good faith, and therefore bars all future claims by any tortfeasor for

contribution or indemnity, California courts consider the factors identified by the California Supreme Court:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including [1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985). "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Id.*

"The party asserting the *lack* of good faith shall have the burden of proof on that issue." Cal. Civ. Proc. Code § 877.6(d) (emphasis added). The party asserting a lack of good faith, i.e., the non-settling party, is "permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500 (citations omitted). "If contested, declarations by the nonsettlor should be filed which in many cases could require the moving party to file responsive counterdeclarations to negate the lack of good faith asserted by the nonsettling contesting party." *City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1261–62 (1987).

"'[W]hen no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient.'" *Michell v. United States*, No. 09cv0387 BTM(JMA), 2011 WL 3903220, at *2 (S.D. Cal. Sept. 6, 2011) (quoting *City of Grand Terrace*, 192 Cal. App. 3d at 1261); *see also Hernandez v. Sutter Med. Ctr. of Santa Rosa*, No. C 06-03350 SBA, 2009 WL 322937, at *3 (N.D. Cal. Feb. 9, 2009) ("Where … all the parties have received timely and sufficient notice, and have not filed any oppositions to a proposed settlement, a court need

not perform a *Tech-Bilt* analysis."); *Bonds v. Nicoletti Oil, Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 4104272, at *5 (E.D. Cal. Sept. 3, 2008) ("Because no opposition to the motion has been filed … the *Tech-Bilt* factors are not considered or weighed.").

Should a court grant an application for a good faith settlement determination under California Code of Civil Procedure sections 877 and 877.6, "only those non-parties with *constitutionally sufficient prior notice* will be bound by a 'good faith settlement' determination[.]" *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010) (emphasis added); *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006) ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given *notice and an opportunity to be heard*.") (emphasis added).

### 1. *Tech-Bilt, Inc.* Analysis

As the present Settlement Motion is unopposed, the Court need not weigh the *Tech-Bilt* factors. *See Michell*, 2011 WL 3903220, at *2; *Hernandez*, 2009 WL 322937, at *3; *Bonds*, 2008 WL 4104272, at *5. Nevertheless, a careful review of the Settlement Motion and the operative pleadings reveals that the Settlement Agreement satisfies the test for a good faith settlement set forth in *Tech-Bilt, Inc*.

The first *Tech-Bilt, Inc.* factors are the most important. *Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, Case No.: CV 19-03007-AB (FFMx), 2020 WL 2504331, at *4 (C.D. Cal. May 13, 2020). They are "[1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Here, William Koska, counsel for Ms. Long, declared that "[a]fter several calls and correspondence with counsel for [the Hortman Parties] over the course of July and August 2024, [Ms. Long and the Hortman Parties] have arrived at a settlement figure of $7,500.00, or one (1) percent of the total amount of

estimated clean-up costs." (Doc. 240-1 at 2, Declaration of William K. Koska in Support of Motion for Determination of Good Faith Settlement ("Koska Decl."), ¶ 6.) The Court is persuaded that this amount is sufficient given Ms. Long's relatively brief tenure operating the dry-cleaning business located at the 1654 Property. (*See* Long Decl. ¶¶ 1, 4–5 (declaring Ms. Long ran the dry-cleaning business for approximately 31 months from June 1999 until December 2001 when the dry-cleaning business was sold to Angela Hong, who still runs the business).) The Court also finds that this amount is sufficient because "a settlor should pay less in settlement than [she] would if [she] were found liable after a trial." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499–500.

"Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Id*. at 499–500. Here, Ms. Long declared that she hopes to retire towards the end of this year and that her seamstress salary is $46,000 per year. (Long Decl. ¶¶ 10–11.) Ms. Long also declared that, after she retires, she will get only her Social Security benefit of approximately $2,400 per month and that her insurance company from when she operated the dry-cleaning business declined to defend her. (*Id.* ¶¶ 11–12.) Therefore, the Court finds that Ms. Long's financial condition weighs in favor of a good faith settlement determination. Further, there is no evidence before the Court that the proposed settlement is the result of collusion, fraud, or tortious conduct. *See Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

\*\*\*

Accordingly, the Court finds that the settlement between Ms. Long and the Hortman Parties was entered into in good faith and in compliance with California Code of Civil Procedure Sections 877 and 877.6. Those given "constitutionally sufficient prior notice" will be bound by the Court's "good faith settlement" determination to the extent permissible by law. *See City of Emeryville*, 621 F.3d at 1266 (finding the parties had no expectation that it was resolving "site B" liability when it executed the "site A" settlement

and, therefore, that any claims related to site B were not barred by the district court's good faith settlement determination).

**B.     CERCLA**

Ms. Long also seeks approval of the Settlement Agreement and an order providing her contribution protection under CERCLA. 42 U.S.C. § 9613(f). In considering this request, the Court first reviews CERCLA's statutory framework.

Congress enacted CERCLA "in response to the serious environmental and health risks posed by industrial pollution." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). CERCLA "imposes *strict liability* on four categories of potentially responsible parties (PRPs) for the cleanup costs of an environmental hazard, *even if the person did not contribute to the contamination*." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956–57 (9th Cir. 2013) (emphasis added); *see also United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 874 (9th Cir. 2014) (CERCLA "imposes strict liability on certain classes of parties who are potentially responsible for a site's contamination.") (internal quotation omitted). "CERCLA liability is joint and several, meaning that a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination. The party saddled with the cleanup costs may, in turn, sue other potentially responsible parties for contribution." *Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912 (9th Cir. 2010); *see also AmeriPride Servs. Inc. v. Tex. E. Overseas Inc.*, 782 F.3d 474, 480 (9th Cir. 2015); 42 U.S.C. § 9607(a); 42 U.S.C. § 9613(f)(1).

There are four categories of PRPs:

> (1) the owner and operator of a vessel or a facility,[4] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by

---

[4] "The term 'facility' means … any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located …." 42 U.S.C. § 9601(9).

    contract, agreement, or otherwise arranged for disposal or treatment … of hazardous substances … , and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities … from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…

42 U.S.C. § 9607(a). PRPs are responsible for "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe ...; (B) any other necessary costs of response incurred by any other person …; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study … ." 42 U.S.C. § 9607(a)(4)(A)–(D).

    CERCLA's otherwise harsh, strict-liability scheme encourages settlement by providing contribution protection to "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement[.]" 42 U.S.C. § 9613(f)(2). In other words, CERCLA prevents parties settling with the United States or a State from later being sued for contribution by non-settling parties. *See id.* "Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." *Id.*

    CERCLA is silent as to whether contribution protection and the reduction of the remaining liability from the non-settling parties applies to settlement agreements between private parties. For this reason, the Ninth Circuit looks to another CERCLA provision for the authority to allocate costs and afford contribution protection in settlements between private parties: "In resolving contribution claims, the court may allocate response costs among liable parties *using such equitable factors as the court determines are appropriate*." 42 U.S.C. § 9613(f)(1) (emphasis added). In *AmeriPride Services, Inc.*, the Ninth Circuit held that "a district court has discretion under [this provision] to determine the most equitable method of accounting for settlements between private parties in a contribution action." 782 F.3d at 487; *see also Cooper Drum Cooperating Parties Grp.*, 2020 WL

2504331, at *3 ("To facilitate early and complete settlement of *private* cost-recovery actions …, federal courts may approve settlements and enter bar orders that discharge all claims of contribution by non-settling defendants against settling defendants.") (emphasis added).  However, district courts must exercise their discretion in a manner that is consistent with the principles and purposes of CERCLA.  *AmeriPride*, 782 F.3d at 488.  "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.*

Courts generally review settlements and "enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate." *Cooper Drum Cooperating Parties Grp.*, 2020 WL 2504331, at *3 (quoting *Coppola v. Smith*, CASE NO. 1:11-CV-1257 AWI BAM, 2016 WL 3407571, at *2 (E.D. Cal. June 20, 2016)); *see also Rev 973, LLC v. Mouren-Laurens*, Case No. CV 98-10690 DSF (Ex), 2016 WL 9185139, at *1 (C.D. Cal. July 1, 2016) ("In considering a settlement under CERCLA, a district court is to consider whether the proposed settlement is fair, reasonable, and consistent with the purposes that CERCLA is intended to serve.").  "A presumption of fairness in settlement arises where: '(1) counsel is experienced in similar litigation; (2) settlement was reached through arm's-length negotiations; and (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently.'" *Cooper Drum Cooperating Parties Grp.*, 2020 WL 2504331, at *4 (quoting *City of San Diego v. Nat'l Steel & Shipbuilding Co.*, No. 09cv2275 WQH (JLB), 2014 WL 3489282, at *12 (S.D. Cal. July 10, 2014)).

Further, when considering the equitable allocation of costs, courts weigh the so-called "*Gore* Factors."  They are:

> (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal,

State, or local officials to prevent any harm to the public health or the environment."

*TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146 n.1 (9th Cir. 2018) (internal quotation omitted).

While districts courts are free to grant settling parties contribution protection, the scope of permissible contribution protection is limited. "CERCLA's policy of encouraging settlements by authorizing contribution protection to settling parties should not be construed in a manner that ambushes persons … who had no connection with, and no responsibility for, the pollution on the site at issue in the settlement … ." *City of Emeryville*, 621 F.3d at 1264. "[T]he overwhelming majority of courts that have imposed or enforced a CERCLA contribution bar in a private-party settlement have done so only where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who otherwise had at least constructive notice that their contribution claims stood to be extinguished." *Id.* at 1265. Additionally, a contribution bar should not extend beyond "matter expressly contemplated by the parties in entering into the … [s]ettlement." *Id.* at 1264.

For the same reasons set forth above (*see* Section II.B.1), the Court finds that the proposed settlement is fair, reasonable, adequate, and consistent with the purposes or CERCLA. *See Cooper Drum Cooperating Parties Grp.*, 2020 WL 2504331, at *3; *Rev 973, LLC*, 2016 WL 9185139, at *1. The Court also finds that "'(1) counsel is experienced in similar litigation; (2) settlement was reached through arm's-length negotiations; and (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently[,]'" triggering a presumption of fairness. *See Cooper Drum Cooperating Parties Grp.*, 2020 WL 2504331, at *4 (quoting *City of San Diego*, 2014 WL 3489282, at *12). (*See also* Koska Decl. ¶¶ 6, 8 (declaring that Mr. Koska is experienced in environmental matters and that the settlement was reached after several calls and correspondence with the Hortman Parties' counsel).) The Court also bars future actions for contribution against Ms. Long to the extent permissible by law. *See City of Emeryville*,

621 F.3d at 1264 (finding a contribution bar should not extend beyond "matter expressly contemplated by the parties in entering into the [] [s]ettlement").

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Ms. Long's Settlement Motion.

**IT IS SO ORDERED.**

DATE: April 21, 2025

                                                HON. RUTH BERMUDEZ MONTENEGRO
                                                UNITED STATES DISTRICT JUDGE