# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PACIFIC RESOURCES ASSOCIATES LLC, a Delaware limited liability company, et al.,

Plaintiffs,

v.

SUZY CLEANERS, an organization, et al.,

Defendants.

Case No.: 3:20-cv-00234-RBM-DEB

**ORDER OVERRULING OBJECTIONS**

**[Docs. 337, 338]**

Before the Court are Guhn Y. Kim and Yun Soon Kim's (collectively, "the Kims") objections to two of Magistrate Judge Butcher's non-dispositive pretrial orders under Federal Rule of Civil Procedure ("Rule") 72(a). The first objection (Doc. 337) ("Sanctions Objection") concerns Judge Butcher's Order Granting the Hortmans' Motion to Enforce Protective Order and for Sanctions ("Sanctions Order") (Doc. 334). The second objection (Doc. 338) ("Modification Order Objection") concerns Judge Butcher's Order Granting in Part the Kims' Motion to Modify the Protective Order ("Modification Order") (Doc. 335). Kim Buhler, as the administrator and executor of the Estate of Barbara Hortman, and Kim Buhler and Norman Alton Horman, III, as trustees of the Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1, Dated July 2, 1985 (collectively, "the Hortmans"), filed an omnibus opposition to both objections. (Doc. 340.) The Kims filed replies in support of both their objections. (Docs. 341, 342.)

1

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having reviewed the filings above, and for the reasons set forth below, the Sanctions Objection (Doc. 337) and the Modification Order Objection (Doc. 338) are both **OVERRULED**.

## I.    BACKGROUND

### A.    Factual Background[1]

This case arises out of alleged soil contamination at the Valley Plaza shopping center in Escondido, California.  The claims are between current and former property owners and owners/operators of dry-cleaning businesses allegedly responsible for the contamination.

One disputed issue is whether the Hortmans fraudulently transferred Trust assets to avoid financial responsibility for the Valley Plaza investigation and remediation. The Hortmans produced financial information in response to discovery requests.  The Hortmans designated their financial information as "Confidential" and subject to the Court's Protective Order, which requires that "[a]ll confidential information designated as 'CONFIDENTIAL' must not be disclosed by the receiving party . . . and, in any event, must not be used for any purpose other than in connection with this litigation[.]"

In a separate administrative proceeding, the San Diego Regional Water Quality Control Board ("Water Board") issued a final Cleanup and Abatement Order ("CAO") for Valley Plaza.  The Water Board named the Kims, but not the Hortmans, as responsible parties.  The Kims, through their counsel, filed a Petition for Review with the State Water Resources Control Board challenging the Hortmans' omission from the CAO.  ("Water Board Petition").  The Water Board Petition alleges that the Hortmans fraudulently transferred Trust assets to themselves and described certain of those assets.

---

[1] The factual background here is taken from the Sanctions Order. (Doc. 334.) The Parties do not dispute any part of this background.  The Court cites the CM/ECF electronic pagination for all filings unless otherwise noted.

3:20-cv-00234-RBM-DEB

The Kims also filed a complaint against the Hortmans in the San Diego County Superior Court ("Superior Court Complaint"). The Superior Court Complaint similarly describes the Hortmans' assets in alleging that they fraudulently conveyed Trust assets to avoid liability for the alleged soil contamination.

**B.     The Sanctions Order**

The Hortmans sought sanctions against the Kims and their attorney, alleging that they violated the Protective Order by disclosing the Hortmans' confidential financial information in the Water Board Petition and Superior Court Complaint. (Doc. 308.) The Kims opposed, arguing that: (1) the Hortmans are not "parties" entitled to designate discovery as subject to the Protective Order; (2) the Protective Order is not enforceable as to Barbara Hortman's financial information because any privacy rights Barbara Hortman possessed did not survive her death; (3) the Hortmans did not timely designate portions of their deposition transcripts as confidential under the Protective Order; (4) any such designation was not made in good faith in light of arguments (1) and (2); (5) the Protective Order is ambiguous; and (6) the Kims substantially complied with the Protective Order. (Doc. 314 at 9–19.) On May 14, 2025, Judge Butcher held a hearing on the motion for sanctions. (Docs. 326, 330.)

On December 2, 2025, Judge Butcher issued the Sanctions Order, finding that: "(A) the Hortmans designated their financial information as 'Confidential' and subject to the Protective Order; (B) the Hortmans' designations were proper; (C) the Kims disclosed the Hortmans' confidential financial information in their Water Board Petition and Superior Court Complaint; and (D) sanctions [were] warranted." (Doc. 334 at 4.) Judge Butcher also found that counsel for the Kims, rather than the Kims themselves, was responsible for violating the Protective Order, that these violations "were not substantially justified," and that $15,560, to be paid only by counsel, was a reasonable and appropriate amount of compensatory sanctions. (*Id.* at 6–8.)

**C.     The Modification Order**

The Kims separately sought to modify the Protective Order to permit disclosure of

3

3:20-cv-00234-RBM-DEB

information concerning the late Barbara Hortman' financial records in light of her death. (Doc. 304.) "If a party takes steps to release documents subject to a stipulated [protective] order, the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011) ("*Archbishop*"). The magistrate judge must then (1) "determine whether particularized harm will result from disclosure of information to the public" and, if so, (2) "balance the public and private interests to decide whether [maintaining] a protective order is necessary." *Id.* (citation omitted) (alteration in original). The Kims argued that the Protective Order should have been modified to permit disclosures regarding Barbara Hortman's financial information because (1) disclosure of such information categorically cannot harm a dead person and (2) even if it could, the balancing test weighs in favor of disclosure. (Doc. 304-1 at 6–8.)

Judge Butcher granted in part the motion to modify the Protective Order:

> The Kims may use information disclosed pursuant to the Protective Order in the Superior Court Complaint and Water Board proceedings because both are very closely related and arise out of the same facts at issue in this case. Any submission or use of protected information, however, must be filed under seal or in a manner that protects the information from public disclosure. If sealing or other protection from public disclosure is not available, then the information disclosed pursuant to the Protective Order may not be used in those proceedings.

(Doc. 335.)

Judge Butcher also indicated that if the proceedings before the Water Board had no mechanism by which to protect the confidential information from public disclosure, he would not allow the information to be disclosed. (Doc. 330, Sealed Trans. of May 14, 2025 Motion Hearing ("Hearing Trans."), at 5:15–24.)

## II.   **LEGAL STANDARD**

Under Rule 72(a), a party may object to a magistrate judge's non-dispositive pretrial order within fourteen days after service of the order. "When considering objections to a magistrate judge's non-dispositive order under Rule 72, the district judge must modify or

4

set aside any part of the order 'that is clearly erroneous or is contrary to law.'" *Morton v. Cnty. of San Diego*, Case No. 21-cv-1428-MMA-DDL, 2023 WL 5746921, at *2 (S.D. Cal. Sept. 6, 2023) (quoting Fed. R. Civ. P. 72(a)).

"The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions." *Id.* (citing *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999)). A finding is clearly erroneous in this context when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted). "When reviewing discovery disputes, . . . the [m]agistrate [judge] is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (cleaned up). This standard is highly deferential, and the district judge "may not simply substitute its judgment for that of the [magistrate judge]." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (reviewing a magistrate judge's order awarding sanctions under Rule 72(a)).

"The contrary to law standard applies to a magistrate judge's purely legal determinations." *Morton*, 2023 WL 5746921, at *2 (citation omitted). "A legal conclusion is 'contrary to law' if the magistrate judge applies the wrong legal standard or fails to consider an element of the applicable standard." *J & J Sports Prods., Inc. v. Bracamontes*, No. 11-CV-03713 YGR, 2013 WL 1149742, at *2 (N.D. Cal. Mar. 19, 2013) (citing *Hunt v. NBC*, 872 F.2d 289, 292 (9th Cir. 1989) (noting that such failures constitute abuse of discretion)). Unlike his factual or discretionary determinations, the magistrate judge's purely "legal conclusions are reviewed *de novo* to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

### III.   **DISCUSSION**

The Kims object to both the Sanctions Order and the Modification Order. (Docs. 337, 338.) For the reasons below, the Court overrules both objections.

### A.   **Sanctions Objection**

The Court finds that there is only one purely legal determination in the Sanctions

3:20-cv-00234-RBM-DEB

Order: whether Kim Buhler and Norman Alton Hortman, III, as trustees of the Norman Alton Hortman and Barbara Hortman Revocable Trust No. 1, Dated July 2, 1985, had a right to designate the financial information at issue here as confidential.  The Court reviews this purely legal determination *de novo*.  *Perry*, 268 F.R.D. at 348.

The Kims argue that "any privacy rights the late Barbara Hortman had with respect to her financial records did not survive her death."  (Doc. 337-1 at 12 (citing *People v. Clymer*, 107 Cal. App. 5th 131, 141 (2024) ("It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded. . . .  Further, the right does not survive but dies with the person."); *Hendrickson v. Cal. Newspapers, Inc.*, 48 Cal. App. 3d 59, 62 (1975) (same); *Cordell v. Detective Publ'ns, Inc.*, 419 F.2d 989, 990–91 (6th Cir. 1969).)  The Kims also cite several cases to argue that Kim Buhler and Norman Alton Hortman, III, cannot maintain the confidentiality designation over Barbara Hortman's information because she is dead.  (*Id.*)  These cases do not control.  *See, e.g.*, *Ravellette v. Smith*, 300 F.2d 854, 857 (7th Cir. 1962) (in the search and seizure context, rejecting "an argument that blood taken from the deceased, who was the driver of one of the vehicles, without the consent of his next of kin[,] rendered the blood alcohol evidence inadmissible"); *Kiraly v. FBI*, 728 F.2d 273, 280 (6th Cir. 1984) (Merrit, J., concurring) (agreeing that "the FBI can withhold investigatory records relating to the dead man on the grounds that they are protected as information received from a confidential source"); *Maritote v. Desilu Prods., Inc.*, 230 F. Supp. 721, 724–25 (N.D. Ill. 1964) (holding that "the relatives of a deceased party [cannot] claim invasion of their right of privacy by publications respecting the deceased, when they themselves were not publicized at all in the telecasts").

These cases hold that *an action* for invasion of privacy cannot be maintained by anyone other than the individual whose privacy was invaded, not that *a protective order* becomes unenforceable upon the death of the person whose information the protective order sought to protect.  *See I.R. v. City of Fresno*, Nos. 1:12-CV-00558-AWI-GSA, 1:13-CV-00850 AWI GSA, 2014 WL 1419305, at *4 (E.D. Cal. Apr. 11, 2014) ("Additionally,

3:20-cv-00234-RBM-DEB

the decedent's privacy can be protected through a protective order."). And even if the Court credited the Kims' argument that only a party to an action may invoke a protective order—which it does not—courts "routinely protect nonparty personal information . . . using either particular or blanket protective orders." *Chavez-Deremer v. Coway USA, Inc.*, 2:24-cv-08156-JLS-AJR, 2025 WL 3704376, at *3 (C.D. Cal. Dec. 22, 2025) (citation omitted); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("The party *or person whose privacy is affected* may either object to the discovery request or seek a protective order.") (emphasis added) (citation omitted). As the Hortmans correctly note, financial records and information are often proper subjects of a protective order. (*See* Doc. 340 at 5–7 (collecting cases).) Accordingly, the Court finds that Judge Butcher's legal determination was not contrary to law.

Each of the Kims' other objections to the Sanctions Order concerns a factual determination or discretionary decision. (*See* Doc. 337-1 at 14–15 (factual objection regarding timing of confidentiality designations); *id.* at 15–16 (factual objection regarding whether designations made in good faith); *id.* at 16–19 (objection to discretionary decision that the Kims' counsel violated the Protective Order); *id.* at 19–22 (objection to discretionary decision that the Kims' counsel had not substantially complied with the Protective Order); *id.* at 22–23 (factual objection regarding previous disclosure of financial information); *id.* at 27 (objection to discretionary decision that sanctions, and sanctions amount, were warranted).)

Even if the Court may have reached different conclusions than Judge Butcher had it reviewed these issues *de novo*, such is not the standard on a Rule 72(a) objection. Judge Butcher's Sanctions Order is well-reasoned and addresses each of the Kims' arguments,[2]

---

[2] The Court notes that the Kims make two arguments that Judge Butcher did not address because he could not have. The first is that Kim Buhler "waived protection of Barbara Hortman's assets when she recently sent the Kims an unsolicited email and a Christmas card describing those assets." (Doc. 341 at 13–14.) But "[t]he Court need not consider arguments raised for the first time in the objections to a magistrate judge's non-dispositive

7

and the Court is not "left with the definite and firm conviction that a mistake has been committed." *Morton*, 2023 WL 5746921, at *2, 5 ("A Rule 72 objection is not a vehicle to simply reargue the issues and hope for a different result."). Therefore, the Court **OVERRULES** the Kims' objections (Doc. 337) to the Sanctions Order.

**B.    Modification Order Objection**

The Kims also object to the Modification Order, arguing that (1) good cause to modify the Protective Order exists under the factors set forth in *Archbishop* and (2) the Protective Order should be modified because Barbara Hortman's records stopped being confidential upon her death. (Doc. 338-2 at 10–14.) The Court already rejected the Kims' second argument above, and **OVERRULES** their objection to that extent. The Court also **OVERRULES** the objection regarding application of *Archbishop*.

In *Archbishop*, the Ninth Circuit noted it "review[s] a lower court's decision to grant, lift, or *modify* a protective order for abuse of discretion." 661 F.3d at 423–24 (citation omitted and emphasis added). "A court abuses its discretion when it fails to identify and apply the correct legal rule to the relief requested." *Id.* (citation omitted). The Ninth Circuit then clarified the two-step approach courts must take when considering whether to modify or maintain a protective order:

First, it must determine whether "particularized harm will result from

---

order," and it declines to do so here. *Ye Jiang v. Zhong Fang*, CIVIL NO. 20-00100 JOA-KJM, 2021 WL 2895681, at *4 (D. Haw. July 9, 2021) (collecting cases); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1208 (9th Cir. 2012).

The second argument appears to be that the San Diego County Superior Court eventually disagreed with Judge Butcher's conclusion that the complaint filed in state court violated the Protective Order. (*See* Doc. 355 at 2–6.) The objections were already fully briefed when the Kims indicated the state court's order was "relevant to the pending Objections." Pursuant to the undersigned's chambers rules, "[s]ur-replies and notices of supplemental authority may not be filed without leave of Court, unless there is a subsequent change in binding law that is directly on point." The Hon. Ruth Bermudez Montenegro Civ. Chambers R. III.D. Dicta from the state court order is neither binding nor on point, and the Court will not consider it here.

3:20-cv-00234-RBM-DEB

disclosure of information to the public." [*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).]  As we have explained, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)) (internal quotation marks omitted).  Rather, the person seeking protection from disclosure must "allege specific prejudice or harm." *See id.*  Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance "the public and private interests to decide whether [maintaining] a protective order is necessary." *Phillips*, 307 F.3d at 1211. We have directed courts doing this balancing to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995).  *See Phillips*, 307 F.3d at 1211.

*Id.* at 424.

The *Glenmede* factors are:

(1) whether disclosure will violate any privacy interests;

(2) whether the information is being sought for a legitimate purpose or for an improper purpose;

(3) whether disclosure of the information will cause a party embarrassment;

(4) whether confidentiality is being sought over information important to public health and safety;

(5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefitting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

*Glenmede*, 56 F.3d at 483.

The *Glenmede* factors "need not be given the same weight" and are non-exhaustive. *United States ex rel. Brown v. Celgene Corp.*, Case No. CV 10-3165 GHK (SS), 2016 WL 6542729, at \*7 (C.D. Cal. Mar. 14, 2016) (citing *Glenmede*, 56 F.3d at 483 (noting that the factors "are neither mandatory nor exhaustive")); *see also Gonzales v. Battelle Energy All.*,

3:20-cv-00234-RBM-DEB

*LLC*, Case No. 4:20-cv-00102-BLW, 2024 WL 3623511, at *3 (D. Idaho Aug. 1, 2024) (reviewing four of the *Glenmede* factors because the remaining three were not relevant in that case); *In re AIS GmbH Aachen Innovative Solutions*, Case No. 5:16-mc-80094-EJD, 2021 WL 616502, at *2 (N.D. Cal. Feb. 16, 2021) (similar).

Here, it is undisputed that Judge Butcher properly engaged in the first step under *Archbishop*. As to the second step, although Judge Butcher did not explicitly discuss the *Glenmede* factors in the Modification Order or the motion hearing, he addressed several of the *Glenmede* factors during the motion hearing.[3] (*See* Hearing Trans. at 13:5–20 (first two factors), 18:4–15 (first and third factors), 19:23–20:6 (first and third factors), 24:9–25:17 (first through third factors), 27:19–29:24 (fifth factor), 33:4–34:17 (first through third factors), 36:21–37:14 (first through third factors), 39:18–41:6 (first and third factors), 42:6–17 (fifth factor).)

It is clear from the above transcript excerpts that Judge Butcher considered, and allowed the Kims' counsel to argue, the first, second, third, and fifth *Glenmede* factors. The fourth and sixth factors would not have weighed in the Kims' favor because financial records do not constitute "information important to public health and safety" and the Hortmans are not "public entit[ies] or official[s]." The seventh factor would have weighed in the Kims' favor because this case involves issues that are "important to the public." But on the whole, the Court is not "left with the definite and firm conviction that a mistake has been committed." *Morton*, 2023 WL 5746921, at *2, 5. Judge Butcher considered many of the *Glenmede* factors, and even if the Court would have decided differently than he did

---

[3] *See In re Beverly Hills Hospitality Grp., LLC*, Case No. SACV 17-494-GW, 2017 WL 8186143, at *4 n.4 (C.D. Cal. Oct. 11, 2017) (affirming bankruptcy appeal where bankruptcy court "did not explicitly consider" several required factors but "did address those factors at the hearing"); *Flores v. Albertsons, Inc.*, No. CV0100515AHM(SHX), 2002 WL 11632623, at *3 n.1 (C.D. Cal. Apr. 9, 2002) ("Although the Magistrate Judge's [ ] Order does not articulate the reasoning for his decision, the Magistrate Judge did reveal the bases for his ruling during the [ ] telephonic hearing.").

3:20-cv-00234-RBM-DEB

*de novo*, it must afford significant deference to his discretionary decisions.  Therefore, the Court **OVERRULES** the Modification Order Objection.[4]

## C.   Attorneys' Fees

The Hortmans request their attorneys' fees in opposing the Kims' objections. (Doc. 340 at 15.)  The Hortmans may file a separate motion for attorneys' fees on or before **July 27, 2026**.   If the Kims oppose, they may file an opposition on or before **August 10, 2026**.  The Hortmans may file a reply on or before **August 17, 2026**.

### IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1. The Kims' Sanctions Objection (Doc. 337) is **OVERRULED**.

2. The Kims' Modification Order Objection (Doc. 338) is **OVERRULED**.

3. The Hortmans may file a separate motion for attorneys' fees on or before **July 27, 2026**.  The Kims may file an opposition on or before **August 10, 2026**.  The Hortmans may file a reply on or before **August 17, 2026**.

**IT IS SO ORDERED**.

DATE:  June 23, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] Separately, the Kims' counsel is cautioned that, although disagreement with the Court is fair, and sometimes necessary to zealous advocacy, that disagreement must comport with litigants' duties to "be courteous and respectful to the Court."  S.D. Cal. Civ. R. 2.1(a)(2)(a).  Allegations that the Court is ruling on motions based on convenience or expedience rather than on the law, divorced from any support in the record for such allegations, are not well taken.  (*See* Doc. 338-2 at 11 ("The Magistrate obviously refused to modify the Protective Order for this reason, because had he done so, it would have altered his Order enforcing the Protective Order and imposing sanctions.").)  Even if Judge Butcher had granted the motion to modify the protective order in full, that would not have foreclosed the Sanctions Order, as the Kims' counsel's actions still would have violated the Protective Order.